ATTORNEYS FOR APPELLANT
Robert S. Peck
Center for Constitutional Litigation, P.C.
Washington, DC

John Muller
Montross, Miller, Muller, Mendelson & Kennedy
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE
COMMUNITY HOSPITALS OF INDIANA, INC.
Robert G. Zeigler
Karen L. Withers
Zeigler Cohen & Koch
Indianapolis, Indiana

Marion Michael Stephenson
Shelbyville, Indiana

ATTORNEYS FOR APPELLEE STATE OF
INDIANA
Gregory F. Zoeller
Attorney General of Indiana
Thomas M. Fisher
Solicitor General
Heather Hagan McVeigh
Ashley Elizabeth Harwel
Deputy Attorneys General
Indianapolis, Indiana

ATTORNEY FOR AMICUS CURIAE
INDIANA HOSPITAL ASSOCIATION
Angela Marie Smith
Indianapolis, Indiana

ATTORNEY FOR AMICUS CURIAE
INDIANA STATE MEDICAL ASSOCIATION
Libby Yin Goodknight
Indianapolis, Indiana



FILED
Jan 15 2013, 9:21 am
CLERK
of the supreme court,
court of appeals and
tax court

---

# In the
# Indiana Supreme Court

No. 49S04-1203-CT-135

TIMOTHY W. PLANK, INDIVIDUALLY
AND AS PERSONAL REPRESENTATIVE OF
THE ESTATE OF DEBRA L. PLANK, DECEASED,          *Appellant (Plaintiff below),*

v.

COMMUNITY HOSPITALS OF INDIANA, INC.,          *Appellee (Defendant below).*

AND

STATE OF INDIANA,          *Appellee (Intervenor-Defendant below)*

On Petition To Transfer from the Indiana Court of Appeals, No. 49A04-1004-CT-254

**January 15, 2013**

**Rucker, Justice.**

In this medical negligence action the plaintiff sought an evidentiary hearing to challenge the constitutionality of the Medical Malpractice Act. The trial court denied the request. Concluding that the plaintiff forfeited his opportunity to conduct such a hearing we affirm the judgment of the trial court.

**Facts and Procedural History**

In November 2001, Debra L. Plank began experiencing severe abdominal pain and sought treatment on three or more occasions at the Community Hospitals of Indiana, Inc. ("Community"). During the visits various physicians failed to diagnose and treat Debra's obstructed bowel, as a result of which Debra contracted sepsis and died on December 1, 2001. On November 6, 2003, Debra's husband, Timothy W. Plank, acting individually and as Personal Representative of Debra's estate (collectively "Plank") filed a proposed medical malpractice complaint with the Indiana Department of Insurance against Community and the treating physicians. After the matter had been presented to a Medical Review Panel Plank filed an amended complaint in the Marion Circuit Court in February 2007.

The case was tried to a jury beginning in late August 2009. Prior to trial the physicians were dismissed leaving Community as the sole defendant. On September 3, 2009 the jury returned a verdict in favor of Plank and awarded damages in the amount of $8.5 million. After polling the jury, and without objection from Plank, Community made an oral motion to reduce the jury award to $1.25 million—the cap imposed by the Indiana Medical Malpractice Act (the

"Act").[1] The trial court granted the motion and directed Plank to "please prepare a proposed judgment for the court[.]" To which Plank responded, "[y]es, Your Honor." Tr. at 1353.

Eight days later, Plank filed a written objection to the reduction of the damage award alleging that the cap imposed by the Act is unconstitutional and requesting an evidentiary hearing to develop his constitutional challenge. Initially, the trial court ruled that Plank had waived his objection to the reduction of the jury award and entered judgment in Plank's favor for $1.25 million. Plank then filed a motion to correct error, which the trial court granted in part to hold that Plank had not waived his objection. The trial court did not rule immediately on Plank's request for an evidentiary hearing. Rather, the trial court instructed the parties to submit written briefs on the continued validity of Johnson v. St. Vincent Hospital, 404 N.E.2d 585 (Ind. 1980),[2] in which this Court previously declared that the statutory cap on damage awards under the Act did not violate various Indiana constitutional provisions. The State sought leave to intervene which the trial court granted for the purpose of defending the constitutionality of the statute. Upon consideration of the parties' briefing and after entertaining arguments of counsel, the trial court denied Plank's request for an evidentiary hearing, reinstated its initial order overruling Plank's objection to the reduction of the jury award, and entered judgment in the amount of $1.25 million.

Plank appealed contending he was entitled to an evidentiary hearing on his constitutional challenges. Community cross-appealed arguing error with respect to one of the trial court's jury instructions.

In a divided opinion the Court of Appeals reversed the trial court's denial of Plank's request for an evidentiary hearing, and affirmed the trial court's ruling on Community's jury instruction claim. See Plank v. Cmty. Hosps. of Ind., Inc., 956 N.E.2d 731 (Ind. Ct. App. 2011). Both the State and Community sought transfer which we previously granted, thereby vacating the opinion of the Court of Appeals. See Ind. Appellate Rule 58(A). We address the propriety of Plank's constitutional claim and summarily affirm that portion of the Court of Appeals'

---

[1] Ind. Code §§ 34-18-1-1 to 34-18-18-2.

[2] Johnson was overruled in part on other grounds by In re Stephens, 867 N.E.2d 148 (Ind. 2007) and abrogated on other grounds by Collins v. Day, 644 N.E.2d 72 (Ind. 1994).

3

opinion concerning Community's jury instruction claim. Additional facts are set forth below as necessary.

## Discussion

The Act provides in pertinent part: "[t]he total amount recoverable for an injury or death of a patient may not exceed . . . [o]ne million two hundred fifty thousand dollars ($1,250,000) for an act of malpractice that occurs after June 30, 1999." I.C. § 34-18-14-3. In Johnson this Court addressed a constitutional challenge to the cap imposed for medical malpractice awards under the Act.[3] Appellants in that case argued in part that the statutory cap on their awards violated "the due process and equal protection clauses of the Fourteenth Amendment and the Indiana Constitution, the rights and privileges clause of Art. 1, § 23, of the Indiana Constitution, [and] the right to trial by jury guaranteed by Art. 1, § 20, of the Indiana Constitution." Johnson, 404 N.E.2d at 590. Among other things, reciting numerous evidentiary facts presented at trial concerning a medical emergency in this state, including the general economic conditions of the health and insurance industries, the Johnson court declared in part:

> With these judgments as its basis the Act created voluntary state-sponsored liability insurance for doctors and other health care providers, created a patient compensation fund, took measures to prevent injuries to patients through the negligence of health care providers, and subjected negligence claims against health care providers to special controls limiting patient remedies.

Id. Ultimately the Court upheld the constitutionality of the Act.

Asserting violations of various Indiana constitutional provisions[4] Plank acknowledges that Johnson rejected many of the constitutional claims he now advances. In this appeal Plank

---

[3] At the time the Act imposed a cap of $500,000 for all malpractice acts that occurred prior to January 1, 1990. See Burns Ind. Code Ann. § 16-9.5-2-2(a) (1990 Repl. Vol.) (repealed by P.L. 2-1993 § 209; recodified at I.C. § 34-18-14-3(a)(1)).

[4] Specifically Plank alleges the Act violates the following provisions: the prohibition on "special laws" provided in Article 4, Sections 22 and 23; separation of powers guaranteed by Article 3, Section 1, and Article 7, Section 1; the taking of private property without just compensation under Article 1, Section 21; and the equal privileges provision provided by Article 1, Section 23. See Amended Br. of Appellant at 4-5, 12-13, 14, 23.

4

does not invite reconsideration of <u>Johnson</u>. Instead he seeks an evidentiary hearing by which he might develop a record establishing that the factual underpinnings that led this Court to find the statutory cap constitutional over thirty years ago in <u>Johnson</u> no longer exist today. The State counters in part that <u>Johnson</u> has "definitively settled" the constitutionality of the Act's damages cap. State's Pet. to Trans. at 6. According to the State any changes in circumstances during the past three decades is evidence that the cap has succeeded in accomplishing its intended purpose, and that legislative inaction in the wake of a successful reform effort cannot amount to constitutional violation. State's Pet. to Trans. at 8-9.

We disagree with the State's position. For example in <u>Collins v. Day</u>, 644 N.E.2d 72 (Ind. 1994), this Court addressed whether the agricultural exemption to the Indiana Worker's Compensation Act violated Article 1, Section 23 of the Indiana Constitution. Although ultimately concluding there was no violation, the Court nonetheless observed, "We do not deny that preferential legislative treatment for a classification which was proper when enacted may later cease to satisfy the requirements of Section 23 because of intervening changes in social or economic conditions." <u>Id.</u> at 81. <u>See also</u> <u>Martin v. Ritchey</u>, 711 N.E.2d 1273, 1281 (Ind. 1999) (quoting <u>Collins</u> for the proposition that "a classification which was proper when enacted may later cease to satisfy the requirements of Section 23 because of intervening changes in social or economic conditions" but observing "nothing in the record and briefs before us in this case warrants a re-examination of the legitimacy of the legislative goal underlying the Medical Malpractice Act or its statute of limitations"). And in <u>Cha v. Warnick</u>, this Court rejected a constitutional challenge to the Act declaring in part:

> Plaintiffs presented no evidence that there is no longer a medical emergency in this State. The Legislature originally found such a medical emergency and determined that the Act was a reasonable means of dealing with that emergency. In order to successfully attack the Act on constitutional grounds, Plaintiffs were required to prove that the Act was not a reasonable means to achieve the continuation of medical services in Indiana. In <u>Johnson</u>, this Court found that the delays caused by the Act might be severe. The evidence introduced at this trial showed only the extent of these delays and did not show that there is no longer a medical emergency in this State. Therefore, the evidence introduced at trial does not alter the conclusions of this Court reached in <u>Johnson</u>.

476 N.E.2d 109, 112-13 (Ind. 1985).  In essence, as the Court of Appeals correctly observed, this Court "has declared both that a determination of constitutionality under Section 23 can be revisited and that the challenging party has the burden to prove that changes in circumstances require reversal of existing law."  Plank, 956 N.E.2d at 736.  The question here however is whether, in this case, Plank is entitled to an evidentiary hearing to develop his constitutional argument.

Community insists that Plank has waived his constitutional challenge citing authority for the proposition that appellate courts should decline to address constitutional issues where the record is not developed at trial.  See, e.g., Endres v. Ind. State Police, 809 N.E.2d 320, 321-22 (Ind. 2004) (declining to address claim of state constitutional right to religious freedom where party offered no legal argument in support until he filed his motion to correct error in the trial court); Chidester v. City of Hobart, 631 N.E.2d 908, 912-13 (Ind. 1994) (holding that a challenge to the constitutionality of a statute must be raised with the trial court in order to preserve appellate review of the issue).  Plank counters by citing authority that specifically dictates "the constitutionality of a statute may be raised at any stage of the proceeding including raising the issue sua sponte by this Court."  Morse v. State, 593 N.E.2d 194, 197 (Ind. 1992) (addressing the constitutionality of a statute even though the issue was raised for the first time in a *pro se* motion filed with the court by a defendant who was represented on appeal by counsel who did not raise the issue in the appellant's brief); see also Vaughn v. State, 782 N.E.2d 417, 419-20 (Ind. Ct. App. 2003) (citing Morse in deciding to address defendant's challenge to the constitutionality of a statute even though defendant did not raise the issue at trial and the State argued waiver on appeal), trans. denied, superseded by statute on other grounds.

We make the following observations.  In general "waiver" connotes an "intentional relinquishment or abandonment of a known right."  United States v. Olano, 507 U.S. 725, 733 (1993) (quotation omitted).  And appellate review presupposes that a litigant's arguments have been raised and considered in the trial court.  "To abandon that principle is to encourage the practice of 'sandbagging': suggesting or permitting, for strategic reasons, that the trial court pursue a certain course, and later—if the outcome is unfavorable—claiming that the course followed was reversible error."  Freytag v. Comm'r of Internal Revenue, 501 U.S. 868, 895

6

(1991) (Scalia, J., concurring).  Declining to review an issue not properly preserved for review is essentially a "cardinal principal of sound judicial administration."  Id.

Even though the general rule is that failure to challenge the constitutionality of a statute at trial results in waiver of review on appeal, this Court as well as the Court of Appeals has long exercised its discretion to address the merits of a party's constitutional claim notwithstanding waiver.  See, e.g., Rhinehardt v. State, 477 N.E.2d 89, 93 (Ind. 1985); Payne v. State, 484 N.E.2d 16, 18 (Ind. 1985); Szpunar v. State, 783 N.E.2d 1213, 1219 (Ind. Ct. App. 2003); Reed v. State, 720 N.E.2d 431, 433 (Ind. Ct. App. 1999), trans. denied; Vaillancourt v. State, 695 N.E.2d 606, 610 (Ind. Ct. App. 1998), trans. denied.  It is in this light that Morse can best be understood.  Essentially, Morse stands for the proposition that appellate courts are not prohibited from considering the constitutionality of a statute even though the issue otherwise has been waived.  And indeed a reviewing court may exercise its discretion to review a constitutional claim on its own accord.  See Morse, 593 N.E.2d at 197.

In any event, the parties' debate over whether Plank waived his constitutional challenge is somewhat misplaced.  It is true that the core of Plank's complaint is the constitutionality of the cap imposed on damage awards under the Act.  But Plank's more immediate argument is that the trial court erred in denying him an evidentiary hearing so that he could develop a record to support his constitutional challenges.  Whether Plank has any *right* to such a hearing, and if so, whether he intentionally relinquished or abandoned this right, is subject to dispute.  Regardless, we address whether Plank has forfeited the opportunity to conduct a hearing to develop his constitutional claim.

Unlike waiver, which involves the intentional relinquishment or abandonment of a known right, "forfeiture is the failure to make the timely assertion of a right[.]"  Olano, 507 U.S. at 733.  Under this doctrine "appellate courts may sua sponte find an issue foreclosed under a variety of circumstances in which a party has failed to take the necessary steps to preserve the issue."  Bunch v. State, 778 N.E.2d 1285, 1287 (Ind. 2002).

The record shows that by the time Plank's medical malpractice complaint proceeded to trial this matter had been pending for nearly six years.  Both sides had conducted extensive

discovery and ultimately the trial lasted nearly two weeks generating a twelve-volume transcript. At no time prior to trial did Plank alert the trial court that he took exception to the cap imposed by the Act.

Plank counters that his first opportunity to raise a challenge to the cap was after the verdict, because until that time there was no way to know whether the damages would exceed the cap. See Amended Reply Br. of Appellant at 4-5. He argues that medical malpractice claims present daunting challenges for plaintiffs. Thus, according to Plank, "[w]hen the compensatory damages are artificially capped, as here, deciding to continue to slog on in a constitutional challenge that is likely to take years to resolve is not a decision that can be made lightly or quickly . . . ." Id. at 5-6 n.2.

We first observe it is certainly true that in a variety of contexts parties must make a number of strategic and tactical decisions concerning the prosecution or defense of their claims. And the risk/reward calculus may often dictate the more appropriate course of action. So, for example, in the medical malpractice context where pretrial discovery reveals that actual medical damages alone approach the statutory cap, it may be reasonable to assume that a verdict in favor of the plaintiff may exceed the cap. And thus among the strategic and tactical decisions a plaintiff must consider is whether to file a pre-trial motion challenging the cap imposed by the Act. Indeed in the case before us, although the record is not altogether clear, at oral argument Plank asserted the "damages here were almost entirely compensatory." Oral Arg. Video Trans. at 43:31. And he acknowledged that "most of the $8.5 million verdict was in special[] [damages]." Id. at 46:50. Thus we reject Plank's assertion that there was no way to know whether the damages would exceed the cap and hence the first opportunity to raise the issue was after the jury returned its verdict. Plank was well aware that the limitations of the cap applied to this case. And he certainly could have anticipated a motion to reduce the award in accordance with the cap in the event the jury returned an excess verdict.

In any event, not only did Plank fail to file a pre-trial motion challenging the cap and asserting a need for an evidentiary hearing to develop a record in this regard, but Plank also failed to make any such claim at any time prior to the jury verdict in this nearly two-week long trial. In fact when Community moved to reduce the jury award in accordance with the cap,

Plank raised no objection and agreed to "prepare a proposed judgment for the court[.]"  Tr. at 1353.  It was not until eight days later that Plank objected to the reduction of the award and requested a hearing.  This was too late.  By that point Plank had forfeited any opportunity he otherwise may have been afforded to conduct an evidentiary hearing.  In summary, Plank did not take the steps necessary to preserve his claim.

## Conclusion

We affirm the judgment of the trial court.

Dickson, C.J., and David, Massa and Rush, JJ., concur.