## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Jul 20 2017, 8:49 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Michael T. Yates
More Miller & Yates
Fort Wayne, Indiana

ATTORNEY FOR APPELLEE

Kyle C. Persinger
Spitzer Herriman Stephenson Holderead
Conner & Persinger, LLP
Marion, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

Oliver D. Lambert,

*Appellant-Plaintiff,*

v.

Koenig Equipment, Inc.,

*Appellee-Defendant.*

July 20, 2017

Court of Appeals Case No.
35A05-1612-PL-2775

Appeal from the Huntington Circuit Court.
The Honorable Thomas M. Hakes, Judge.
Trial Court Cause No.
35C01-1411-PL-741

**Friedlander, Senior Judge**

[1] Oliver D. Lambert appeals from the trial court's entry of judgment in favor of Koenig Equipment, Inc. following a bench trial. We affirm.

[2] Lambert presents three issues for our review, which we consolidate and restate as:

> 1. Whether the trial court's conclusions that Koenig was not negligent and not in breach of the parties' oral contract are contrary to the evidence.
>
> 2. Whether the trial court's findings of fact are contrary to the evidence and misleading.

From November 2012 to January 2013, Koenig performed an engine overhaul on Lambert's tractor engine. In doing so, Koenig subcontracted with another company, Auto Tech, to perform some services of the engine overhaul.

During the 2013 spring farming season, Lambert's son, Daniel, used the tractor and noticed that the oil pressure remained low. The Lamberts contacted Koenig, and Koenig sent someone out with equipment to check the oil pressure. Varying oil pressures were obtained using different gauges so it was decided that Koenig would install a new oil pressure relief valve, which it did in mid-June 2013. Still unsatisfied with the oil pressure, the Lamberts allowed Koenig to take the tractor back to the shop at the end of June/beginning of July. At the shop, Koenig removed the oil pump and installed a high-volume oil pressure pump.

Although all testing by Koenig indicated that the oil pressure was within manufacturer specifications, Lambert was still unsatisfied. Kenneth Koenig, of Koenig Equipment, Inc., suggested that Lambert choose a mechanic to test the tractor's oil pressure. James Naden was chosen to do the testing, and he did so in August or September 2013 using an oscilloscope. All test results from this assessment were within specifications.

[6] When the tractor was returned to Lambert after the oscilloscope testing, Daniel removed the oil pan and the new oil pressure pump. He also checked the oil pickup tube for leaks. Still dissatisfied with the oil pressure readings, Lambert hired Hill-T Farm, Inc. to disassemble and rebuild the engine in August 2014.

[7] Lambert then brought this action against Koenig in November 2014. A bench trial was held in September 2016, after which the parties filed proposed findings and conclusions. The trial court entered judgment in favor of Koenig, and Lambert now appeals.

[8] Lambert had the burden of proof at trial and now appeals from a negative judgment; therefore, he may prevail on appeal only upon establishing that the judgment is contrary to law. *Estate of Kappel v. Kappel*, 979 N.E.2d 642 (Ind. Ct. App. 2012). A judgment is contrary to law when the evidence is without conflict and leads to but one conclusion, which the trial court did not reach. *Id.* In evaluating Lambert's appeal, we neither reweigh the evidence nor judge the credibility of the witnesses, and we consider only the evidence most favorable to the judgment together with all reasonable inferences to be drawn therefrom. *Id.*

[9] In addition, the trial court entered Indiana Trial Rule 52 findings and conclusions at the request of Lambert. Our standard of review when the trial court has set forth specific findings and conclusions at the request of a party is well settled:

> First, we determine whether the evidence supports the findings and second, whether the findings support the judgment. In deference to the trial court's proximity to the issues, we disturb

the judgment only where there is no evidence supporting the findings or the findings fail to support the judgment. We do not reweigh the evidence, but consider only the evidence favorable to the trial court's judgment. Challengers must establish that the trial court's findings are clearly erroneous. Findings are clearly erroneous when a review of the record leaves us firmly convinced a mistake has been made. However, while we defer substantially to findings of fact, we do not do so to conclusions of law. Additionally, a judgment is clearly erroneous under Indiana Trial Rule 52 if it relies on an incorrect legal standard. We evaluate questions of law de novo and owe no deference to a trial court's determination of such questions.

*Id.* at 651-52 (quoting *Balicki v. Balicki*, 837 N.E.2d 532, 535-36 (Ind. Ct. App. 2005), *trans. denied*).

## 1. Negligence and Breach of Contract

### *a. Contrary to the Evidence*

[10]   Lambert contends that the trial court's conclusions that Koenig was not negligent and not in breach of the parties' oral contract are contrary to the evidence. Particularly, Lambert asserts that Koenig was negligent and breached the contract by performing in an unworkmanlike manner because it failed to clean contaminants from the tractor engine.

[11]   To recover on his claim of negligence, Lambert must show: (1) a duty owed to him by Koenig; (2) a breach of that duty; and (3) injury to him resulting from Koenig's breach. *See Lanni v. Nat'l Collegiate Athletic Ass'n*, 42 N.E.3d 542 (Ind. Ct. App. 2015). In addition, to demonstrate breach of the parties' contract, Lambert must prove: (1) the existence of a contract; (2) Koenig's breach

thereof; and (3) resulting damages. *Roche Diagnostics Operations, Inc. v. Marsh Supermarkets, LLC*, 987 N.E.2d 72 (Ind. Ct. App. 2013), *trans. denied*.

[12] In support of his assertions, Lambert points to the testimony of John Miller, a retired engineer, who testified that he found blast media[1] in the oil gallery of the engine during its second overhaul at Hill-T Farm. Miller expressed his opinion that the blast media was a result of the overhaul by Koenig and that he did not believe that an oil change or removal of the oil pan would cause that type of contamination.

[13] Lambert also refers to the testimony of Phillip Moorman, an employee of Koenig who performed the majority of the work on the first engine overhaul. Specifically, Lambert cites Moorman's responses of "No" when he was asked on cross-examination whether he was present when Auto Tech performed work on the tractor engine and whether he knew if Auto Tech had aluminum oxide[2] in their shop at that time. Tr., Vol. II, pp. 212-13. In addition, Lambert points to Moorman's inability to recall specific details of the cleaning process of the engine. *Id.* at 219.

---

[1] The term "blast media" refers to the abrasive material, such as sand, that is used in the process of abrasive blasting. Abrasive blasting is a method whereby a high-pressure stream of abrasive material is propelled against a surface in order to smooth a rough surface, roughen a smooth surface, shape a surface, or remove surface contaminants. CORROSIONPEDIA, https://www.corrosionpedia.com/definition/21/abrasive-blasting (last visited July 13, 2017).

[2] Aluminum oxide is a type of blast media used in abrasive blasting. CORROSIONPEDIA, https://www.corrosionpedia.com/definition/21/abrasive-blasting (last visited July 13, 2017).

[14] A review of the evidence most favorable to the judgment shows that Moorman testified at trial that at no part of the overhaul process did he sandblast[3] the tractor engine and that, to his knowledge, it was not sandblasted by anyone else. He also testified that the Koenig facility does not have sandblasting capability, that Auto Tech did not do any sandblasting on the tractor engine, and that, to his knowledge, Auto Tech does not have a sandblast cabinet.[4] In addition, Moorman was asked to respond to the allegation that he failed to remove the end plugs for the main oil gallery and failed to do a thorough cleaning of all lube oil passages. He responded:

> A: It's normal, normal [sic] practice to open up everything on the block and clean out, uh, thoroughly with solvent and air, umm, and a brush if needed. Uh, anytime any work I've done, that's normal practice for me. Umm, I would be surprised if I didn't do it.
>
> Q: Would any point in time at that time would that have ever been sandblasted?
>
> A: No.
>
> Q: There's an allegation that blast material was in the main oil gallery, could that have happened during your rebuild of the engine?
>
> A: I don't know how it could have.

---

[3] Sandblasting is a type of abrasive blasting. CORROSIONPEDIA, https://www.corrosionpedia.com/definition/21/abrasive-blasting and https://www.corrosionpedia.com/definition/1003/sand-blasting (last visited July 13, 2017).

[4] Abrasive blasting is generally performed in enclosed environments such as blasting cabinets or chambers. CORROSIONPEDIA, https://www.corrosionpedia.com/definition/163/blasting (last visited July 13, 2017).

Q: And why is that?

A: Umm, we don't have sandblasting there. Umm, it was, uh, tractor was also located in the front corner of the shop all the way from the door. So, uh, it would be the cleanest part of the shop too. Uh, and we would have no reason to sandblast the block at any point during the rebuild.

*Id.* at pp. 203-04. Further, on cross-examination, Moorman testified that although it is his usual practice to clean the engine block as thoroughly as possible, including the end plugs, due to the amount of time that had passed, at the time of trial he could not specifically recall cleaning the end plugs in this case. *Id.* at 218-19.

Moreover, Darrin Walther, a Koenig technician, replaced the tractor's oil pressure pump at the end of June/beginning of July 2013. He testified that he saw no signs of damage to the old pump when he removed it and that he did not see any blast media:

Q: If there were blast media in the engine, would you have seen it at that time?

A: Yeah, I had it in my hands and disassembled part of the procedure. It would've been evident right then.

Q: If there was blast media in the engine, it would've . . .

A: Correct.

Q: . . . been obvious at that time . . .

A: Correct.

Q: . . . when you replaced the pump.

A: Correct.

*Id.* at 229. Finally, Lambert's son, Daniel, testified that he performed work on the tractor engine after the Koenig overhaul. Daniel's work included fitting a mechanical liquid fill gauge onto the engine. This was a tool that Daniel made himself, and he acknowledged that if there was contaminant in this tool, it would contaminate the engine. *Id.* at 141. Additionally, Daniel disassembled the front harmonic balancer, the oil pump, the oil pickup tube, and the oil pan. He conducted tests on the oil pump and the oil pickup tube, as well as performing several oil changes and replacement of oil filters on the tractor engine. Daniel acknowledged on cross-examination that when he disassembled the oil pan in the late summer or early fall of 2013, he saw no blast media in the oil. *Id.* at 142. Thus, the evidence showed that in the eighteen-plus months between the Koenig overhaul and the second overhaul by Hill-T Farm no one working on the tractor engine saw blast media. Also in those intervening months, several people worked on the tractor engine in capacities that allowed for the possibility of contamination. The evidence here does not lead to conclusions opposite that reached by the trial court.

### b. Res Ipsa Loquitur

[16] Lambert additionally alleges that the doctrine of res ipsa loquitur[5] is applicable to his negligence claim. Our review of the documents on appeal, however,

---

[5] Res ipsa loquitur is a Latin phrase meaning "the thing speaks for itself." This doctrine provides that, in some circumstances, the mere fact of an accident's occurrence raises an inference of negligence. BLACK'S LAW DICTIONARY (10th ed. 2014).

reveals that Lambert did not present this theory to the trial court. Generally, a party cannot argue a new theory on appeal that was not presented to the trial court. *Simmons v. State*, 773 N.E.2d 823 (Ind. Ct. App. 2002), *trans. denied*. Indeed, appellate review presupposes that a litigant's arguments have been raised in and considered by the trial court. *Plank v. Cmty. Hosps. of Ind., Inc.*, 981 N.E.2d 49 (Ind. 2013). "Declining to review an issue not properly preserved for review is essentially a 'cardinal principal of sound judicial administration.'" *Id.* at 53. Accordingly, this argument is waived.

### c. Manufacturer's Manual

[17] Lambert also claims that Koenig was negligent because it failed to follow the requirements in the manufacturer's manual for the tractor. He cites two paragraphs from the section entitled "Cleaning," which provide:

> The best way to clean a crankcase during overhaul is in a chemical "hot tank." This removes all carbonous material and mineral deposits that collect in the cooling passages.
>
> . . . .
>
> All lube oil passages must be thoroughly cleaned. Gallery plugs are to be removed and all passages swabbed with a brush and solvent.

Ex. 17, Exhibits Vol., p. 107.

[18] Lambert's assertion that "[p]ower washing with hot water is neither permitted nor advised" for the tractor engine is without support. Appellant's Br. p. 15. The manual sets forth the best way, according to the manufacturer, to clean the crankcase. The manual neither states that a chemical hot tank is the *required*

process or the *only* process to clean a crankcase nor does it state that power washing with hot water is ill-advised. Furthermore, there was no testimony at trial that this method of washing a crankcase was improper. Lambert's argument fails.[6]

## 2. Findings of Fact

[19] Finally, Lambert asserts that several of the trial court's findings of fact are contrary to the evidence and misleading. In challenging the court's findings, Lambert must establish that they are clearly erroneous; that is, a review of the record leaves one firmly convinced that a mistake has been made. *See Estate of Kappel*, 979 N.E.2d 642.

[20] The portion of Finding of Fact No. 12 with which Lambert claims error, provides: "Auto Tech did not do any sand blasting of any of the engine parts." Appellant's App. pp. 10-11. The evidence most favorable to the judgment reveals that Koenig employee Moorman testified at trial that he was familiar with all the work that Auto Tech performed in this matter and that Auto Tech did not do any sandblasting of this engine. The evidence supports the finding. Moreover, Lambert's argument is an invitation to reweigh the evidence, which we may not do. *See Estate of Kappel*, 979 N.E.2d 642.

---

[6] In this section of his brief, in addition to the argument concerning the manufacturer's manual, Lambert restates the same arguments he made in section 1., a. concerning his allegations that the trial court's conclusions were contrary to the evidence. Because we have previously addressed those arguments, we do not revisit those issues here.

[21]     Finding of Fact No. 22 provides: "[The Lamberts] used the Tractor in April[ ] 2013 for the spring farming season. During such time the Tractor was used for approximately 25 hours." Appellant's App. p. 12. On cross-examination at trial, Daniel testified:

> Q: Alright, in 2013, uh, after you received the tractor back from Koenig you used that, uh, for your spring season, correct?
>
> A: Yes, as soon as it was returned, yeah.
>
> Q: And would you estimate about 25 hours on the tractor that spring?
>
> A: Less than that.
>
> Q: Alright. What would your estimate be?
>
> A: Uh, probably about 12, right around 12 to 14.
>
> Q: If you had a, what was [sic] the engine hours when you took it in for overhaul, it was 3,102 hour[s], was it not?
>
> A: Yes, yes.
>
> Q: And could you turn to Tab number "5" for me, please?
>
> A: This, this here?
>
> Q: Yes. That should be the MacAllister invoice.
>
> A: Okay.
>
> Q: And, uh, right below it looks like your name in the upper right-hand corner two lines down, meter reading . . .
>
> A: Umm, umm.
>
> Q: . . . 3,127.
>
> A: Umm, umm.
>
> Q: So that's where I'm getting 25 hours, would you dispute that?
>
> A: Well, this didn't . . . this had maybe run time on it from that was not in the field.
>
> Q: Alright.

A: You know.

Q: But it still had, so the engine would've had 25 hours, but you're saying . . .

A: Oh, yeah.

Q: . . . it may not be all in the field.

A: Exactly, exactly.

Tr. pp. 138-40. As before, the evidence here supports the trial court's finding and does not convince us that a mistake has been made.

[22] Next, Lambert alleges that Finding of Fact No. 24 is misleading. It states: "Moorman testified that the oil pressure gauge on the Tractor may show lower oil pressure as during the overhaul a new rocker arm bracket was installed which created less oil pressure due to bigger passages." Appellant's App. p. 12. Lambert makes no showing as to how this statement is misleading; rather, his argument is merely composed of questions that constitute a request to this Court to reweigh the evidence. We must decline Lambert's request.

[23] As his final contention, Lambert claims that Finding of Fact No. 44 is misleading. The court determined that "[Lambert] later had the Tractor engine rebuilt which lead to higher oil pressure as measured by Daniel including some as high as 79 psi, which is above the upper end of the recommended oil pressure of 65 psi." *Id.* at 15. The evidence at trial included the tractor manual specifications that state "[o]il pressure at rated rpm (190˚ - 210˚F oil temperature)" should be 45 to 65 psi. Ex. 17, Exhibits Vol., p. 105. In addition, the results of Daniel's oil pressure test in October 2014 following the second engine overhaul were admitted. These results show Daniel obtained

psi's in the 70's, including a psi of 79.  Ex. 16, Exhibits Vol., p. 104.  We disturb the judgment only where there is no evidence supporting the findings.  *Estate of Kappel*, 979 N.E.2d 642.  The evidence supports Finding No. 44.

[24] Having concluded that the trial court's judgment is not contrary to law and that its findings of fact are supported by the evidence, we affirm the trial court's judgment in favor of Koenig.

[25] Judgment affirmed.

Riley, J., and Bailey, J., concur.