## MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



FILED

Nov 17 2020, 8:39 am

CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Cara Schaefer Wieneke
Wieneke Law Offices, LLC
Brooklyn, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

David E. Corey
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

In the Matter of the Termination of the Parent-Child Relationship of O.K. & B.K. (Minor Children)

and

T.A. (Mother),
*Appellant-Respondent,*

v.

Indiana Department of Child Services,
*Appellee-Petitioner.*

November 17, 2020

Court of Appeals Case No.
20A-JT-618

Appeal from the Steuben Circuit Court

The Honorable Allen N. Wheat, Judge

Trial Court Cause Nos.
76C01-1910-JT-187
76C01-1910-JT-188

**Bradford, Chief Judge.**

# Case Summary

[1]     T.A. ("Mother") is the biological mother of B.K. and O.K. (collectively, "the Children").[1]  The Department of Child Services ("DCS") became involved with Mother and the Children due to concerns of domestic violence in the family's home and drug use by Mother.  On July 5, 2018, the Children were removed from Mother's care and alleged to be children in need of services ("CHINS").  Mother subsequently admitted that the Children were CHINS and the juvenile court adjudged them as such.  Following the CHINS adjudication, Mother was ordered to complete certain services, but failed to successfully do so.  In light of Mother's failure to successfully complete services, DCS eventually petitioned to terminate her parental rights to the Children.  Following an evidentiary hearing, the juvenile court granted DCS's termination petition.  On appeal, Mother contends that DCS failed to make reasonable efforts to reunify the family, thus depriving her of due process.  Concluding otherwise, we affirm.

# Facts and Procedural History

[2]     Mother is the biological mother of O.K., who was born on January 12, 2006, and B.K., who was born on April 18, 2007.  DCS became involved with

---

[1]  The Children's biological father is deceased.

Mother and the Children on July 5, 2018, after police responded to a domestic incident at the family's residence and one of the Children claimed that Mother had used drugs in her presence. DCS removed the Children from Mother's care and alleged the Children to be CHINS.

[3] On September 19, 2018, Mother admitted that the Children were CHINS and acknowledged that she had "substance abuse issues and [a] dysfunctional family." Ex. Vol. p. 37. The juvenile court, noting Mother's admission, adjudged the Children to be CHINS and entered a dispositional decree. In its decree, the juvenile court ordered Mother, *inter alia*, to do the following:

- contact the Family Case Manager ("FCM") every week;

- notify the FCM of any changes in address, household composition, employment, or telephone number within five days;

- notify the FCM of an arrest or criminal charges for any household member within five days;

- allow the FCM and other service providers to make announced and unannounced visits with the Children and to the family residence;

- enroll in all programs recommended by DCS or service providers within a reasonable time;

- participate in all recommended programs;

- keep all appointments with DCS and service providers;

- maintain safe and suitable housing and keep the family residence in a manner that is structurally sound, sanitary, clean from clutter and safe for the children;

- secure and maintain a legal and stable source of income;

- refrain from the use of alcohol or any illegal controlled substance;

- obey the law;

- complete a parenting assessment and follow all recommendations;

- complete a substance-abuse assessment and follow all treatments and recommendations;

- submit to random drug screens;

- complete a psychological evaluation and complete any recommended services;

- refrain from committing any acts of domestic violence;

- do not allow Mother's fiancée to have any contact with Mother or the Children; and

- attend scheduled visits with the Children.

[4] On June 25, 2019, the juvenile court approved a modified permanency plan for the Children. In its order, the juvenile court noted that the Children had engaged in individual therapy, had worked with a skills coach, and were progressing well. It noted that DCS had provided Mother with substance-abuse treatment; home-based services, including counseling and supervised visitation; and random drug screens. Mother, however, had displayed a lack of progress; had not complied with the case plans; was not fully engaged in services, many of which had been suspended; continued to test positive for illegal substances; and was not consistent with visitation with O.K. The juvenile court approved a

plan for reunification with a concurrent plan for the termination of Mother's parental rights and adoption.

[5] On October 7, 2019, DCS filed petitions to terminate Mother's parental rights to the Children. The juvenile court conducted an evidentiary hearing on January 28, 2020. During this hearing, DCS presented evidence outlining Mother's failure to comply with services, remain drug free, and make any significant progress in improving her ability to provide the necessary care for the Children. Following the conclusion of the evidence, the juvenile court took the matter under advisement. On February 11, 2020, the juvenile court issued an order terminating Mother's parental rights to the Children.

# Discussion and Decision

[6] The Fourteenth Amendment to the United States Constitution protects the traditional right of parents to establish a home and raise their children. *Bester v. Lake Cty. Office of Family & Children*, 839 N.E.2d 143, 147 (Ind. 2005). Although parental rights are of a constitutional dimension, the law allows for the termination of those rights when parents are unable or unwilling to meet their parental responsibilities. *In re T.F.*, 743 N.E.2d 766, 773 (Ind. Ct. App. 2001), *trans. denied*. Parental rights, therefore, are not absolute and must be subordinated to the best interests of the children. *Id.* Termination of parental rights is proper where the children's emotional and physical development is threatened. *Id.* The juvenile court need not wait until the children are

irreversibly harmed such that their physical, mental, and social development is permanently impaired before terminating the parent–child relationship. *Id.*

[7] In challenging the termination of her parental rights, Mother does not challenge the juvenile court's findings or conclusions thereon. Mother's sole contention is that she "was denied due process of law where DCS failed to make reasonable efforts to reunify the family." Appellant's Br. p. 4.

> Due process protections bar state action that deprives a person of life, liberty, or property without a fair proceeding. It is unequivocal that the termination of a parent-child relationship by the State constitutes the deprivation of an important interest warranting deference and protection, and therefore when the State seeks to terminate the parent-child relationship, it must do so in a manner that meets the requirements of due process.

*In re G.P.*, 4 N.E.3d 1158, 1165 (Ind. 2014) (internal quotations omitted).

[8] Mother acknowledges that she did not raise her due process argument to the juvenile court. It is axiomatic that an argument cannot be presented for the first time on appeal. *Ind. Bureau of Motor Vehicles v. Gurtner*, 27 N.E.3d 306, 311 (Ind. Ct. App. 2015). "[A]ppellate review presupposes that a litigant's arguments have been raised and considered in the trial court." *Plank v. Cmty. Hospitals of Ind., Inc.*, 981 N.E.2d 49, 53 (Ind. 2013). Thus, because Mother did not present her due process argument to the juvenile court, it is waived for purposes of appeal. *See id.*

Mother argues, however, that we should nevertheless consider her due process argument under the fundamental error doctrine.

> The fundamental error doctrine is a narrow exception to the waiver doctrine and applies to an error that was so egregious and abhorrent to fundamental due process that the trial judge should or should not have acted, irrespective of the parties' failure to object or otherwise preserve the error for appeal. For our court to overturn a trial court ruling based on fundamental error, the error must have been a clearly blatant violation of basic and elementary principles, and the harm or potential for harm therefrom must be substantial and appear clearly and prospectively.

*N.C v. Ind. Dep't of Child Servs.*, 56 N.E.3d 65, 69 (Ind. Ct. App. 2016) (citations and internal quotation marks omitted), *trans. denied*.

The Indiana Supreme Court has explained that "the process due in a termination of parental rights action turns on balancing three *Mathews*[2] factors: (1) the private interests affected by the proceeding; (2) the risk of error created by the State's chosen procedure; and (3) the countervailing governmental interest supporting use of the challenged procedure." *In re K.D.*, 962 N.E.2d 1249, 1257 (Ind. 2012) (citing *In re C.G.*, 954 N.E.2d 910, 917 (Ind. 2011)). As recognized in *In re C.G.*, in termination cases, both the State and the parent have substantial interests affected by the proceedings. 954 N.E.2d at 917–18.

---

[2] *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976).

We therefore focus on the risk of error created by DCS's actions and the trial court's actions. *Id.* at 918.

[11] We have previously concluded that numerous procedural irregularities in a CHINS proceeding can amount to a deprivation of due process. *See In re A.P.*, 734 N.E.2d 1107, 1112–13 (Ind. Ct. App. 2000), *trans. denied*. Mother, however, does not allege that there were procedural irregularities in the instant matter, instead arguing that her due process rights were violated by DCS's failure to provide services to assist in reunifying the family. Specifically, Mother asserts that "DCS's failure to make a referral for family therapy for Mother and her two daughters until after it had already begun parental rights termination proceedings created a great risk of error and demonstrated DCS's failure to make reasonable efforts towards reunifying this family." Appellant's Br. p. 15. We disagree.

[12] "What constitutes 'reasonable efforts' will vary by case" and the requirement that DCS make reasonable efforts to reunite a family "does not necessarily always mean that services must be provided to the parents." *In re T.W.*, 135 N.E.3d 607, 615 (Ind. Ct. App. 2019), *trans. denied*. In this case, the record provides that Mother was referred to various services. Specifically, with regard to family therapy, the record reveals it was initially recommended that Mother participate in individual therapy occurring "in the future" and "as recommended." Ex. Vol. pp. 61, 89. Service providers indicated that Mother and the Children needed to work on individual issues before family therapy would likely have been productive.

[13] Despite Mother's inconsistent participation in and lack of progress with services, FCM Kerrye Herbin eventually referred Mother and the Children for family therapy. Mother and O.K. participated in family therapy, with the pair participating in two of the seven scheduled sessions. In addition, the Children were referred to family therapy without Mother present and the family was collectively referred to family therapy. In describing her efforts to reunify the family, FCM Herbin testified as follows:

> I have put in referrals. I have um allowed mom to call um [B.K.] at a visit with [O.K.]. Um I have allowed the girls to spend time with each other um at previous foster mom's home, house and current foster mom's house. Um and I've attempted to set up family therapy together. It's hard to set up family therapy when I don't hear anything from [Mother].

Tr. Vol. II p. 193.

[14] Contrary to Mother's claim on appeal, the record reveals that DCS offered Mother reasonable services aimed at reunification. Mother's lack of communication with DCS and participation in services negatively affected progress towards reunification. Mother failed to make the individual progress that service providers deemed necessary before they believed family therapy would be effective and, when the family was referred to family therapy, Mother failed to engage with service providers or consistently participate. Based on the record before us, we conclude that Mother has failed to establish that she was denied due process in relation to the termination of her parental rights to the Children.

The judgment of the juvenile court is affirmed.

Najam, J., and, Mathias, J., concur.