

**FILED**

Dec 29 2023, 8:58 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Ronald J. Moore
The Moore Law Firm, LLC
Richmond, Indiana

ATTORNEYS FOR APPELLEE

Theodore E. Rokita
Attorney General of Indiana

Abigail R. Recker
Deputy Attorney General
Indianapolis, Indiana

# IN THE
# COURT OF APPEALS OF INDIANA

| | |
|---|---|
| In the Matter of the Termination of Parental Rights of:<br><br>A.B. (Minor Child),<br>and<br>I.B. (Mother),<br>*Appellant-Respondent,*<br><br>v.<br><br>Indiana Department of Child Services,<br>*Appellee-Petitioner.* | December 29, 2023<br><br>Court of Appeals Case No.<br>23A-JT-901<br><br>Appeal from the Randolph Circuit Court<br><br>The Honorable Jay L. Toney, Judge<br><br>Trial Court Cause No.<br>68C01-2209-JT-138 |

**Opinion by Judge Kenworthy**
Chief Judge Altice and Judge Weissmann concur.

**Kenworthy, Judge.**

## Case Summary

[1] Due process and due diligence go hand-in-hand. These principles are of utmost importance in proceedings terminating parental rights. In this case, I.B.'s ("Mother") parental relationship with her child, A.B., was terminated even though Mother was not adequately served with process. This shortcoming violated Mother's due process rights and prevented the trial court from obtaining personal jurisdiction over her. Because the trial court's order was therefore void, we reverse and remand.

## Facts and Procedural History

[2] Mother and C.B. ("Father") are the biological parents of A.B.[1] Within a month of A.B.'s birth, Randolph County Department of Child Services ("DCS") filed a petition alleging A.B. was a child in need of services ("CHINS"), in part because of Mother's and Father's persistent drug use. Mother and Father admitted A.B. was a CHINS on June 24, 2021—a day after A.B. turned two months old.

[3] Because Mother and Father continued to use drugs and had not maintained a stable home, DCS petitioned to terminate Mother and Father's parental rights. A summons was sent to Mother by certified mail addressed to her last known address in Ohio. It was returned to DCS, marked as not deliverable. Before the initial hearing, the trial court appointed the attorney who represented Mother in

---

[1] Father—whose parent-child relationship with A.B. was also terminated—does not participate in this appeal.

the underlying CHINS proceeding to represent her in the TPR proceeding. Mother's appointed counsel appeared at the initial hearing. Mother did not.

[4] In mid-November 2022, DCS requested permission to serve Mother via publication. Although DCS did not file an affidavit of diligent inquiry along with its praecipe, the trial court granted DCS permission to serve Mother by publication. DCS did not file proof of publication thereafter. Instead, a few days later, DCS submitted proof of service upon Mother based on DCS Family Case Manager Brittany Duffer personally serving Danielle Smith—Father's mother[2]—at Smith's home in Richmond, Indiana. DCS and the trial court deemed Smith to have accepted service on Mother's behalf.

[5] The trial court held a fact-finding hearing on February 2, 2023. And just like at the initial hearing, Mother's appointed counsel was present, but Mother herself was not. At the start of the hearing, Mother's counsel indicated she tried to contact Mother and inform her about the fact-finding hearing multiple times. But Mother never responded. Mother's counsel further explained she had "no good address" for Mother and had "not had contact with [Mother] for a substantial period of time." *Tr. Vol. 2* at 4. Shortly after, counsel for DCS conveyed to the trial court that DCS "did make in-person service on both parents for the date and time of today's hearing." *Id.* at 5.

---

[2] The record refers to Smith as "Paternal Grandmother." Mother and Father are not married, so Mother and Smith have no blood or legal relationship.

The trial court terminated Mother's parental relationship with A.B. In its order, the trial court stated: "All persons required to be notified of these proceeding[s] and the hearings were so notified." *Appellant's App. Vol. 2* at 68. It continued: "Mother received adequate service of the Petition and of the date and time of these proceedings, and she has willfully chosen not to attend this hearing." *Id.* Additional facts are provided when necessary.

## 1. Due Process is Essential in TPR Proceedings

On appeal, Mother claims her due process rights were violated because she was not served with process.[3] A parent's interest in the care, custody, and control of his or her children is "perhaps the oldest of the fundamental liberty interests." *In re R.S.*, 56 N.E.3d 625, 628 (Ind. 2016) (quotation omitted). And the parent-child relationship is one of the most valued relationships in our culture. *See In re Adoption of O.R.*, 16 N.E.3d 965, 972 (Ind. 2014).

That is not to say parental rights are absolute; they are not. *See R.S.*, 56 N.E.3d at 628. But parents' liberty interest in the care, custody, and management of their child "does not evaporate simply because they have not been model parents or have lost temporary custody of their child to the State." *In re C.G.*,

---

[3] On appeal, DCS contends Mother waived her due process argument by failing to raise it in the trial court. Generally, a party waives on appeal an issue that was not raised before the trial court. *See, e.g., Plank v. Cmty. Hosp. of Ind., Inc.*, 981 N.E.2d 49, 53 (Ind. 2013). But we have discretion to address such claims, especially when they involve constitutional rights, the violation of which would be fundamental error. *Id.* at 53–54. As further discussed below, terminating Mother's parental rights implicates her substantive and procedural due process rights. Thus, we exercise our discretion to review Mother's due process claim even though it was not raised below. *See id.*; *see also Pierce v. State*, 29 N.E.3d 1258, 1268 (Ind. 2015) (denoting a preference for resolving cases on their merits).

954 N.E.2d 910, 917 (Ind. 2011) (quoting *Santosky v. Kramer*, 455 U.S. 745, 753 (1982)). Said differently, parental rights are "an important interest warranting deference and protection, and a termination of that interest is a 'unique kind of deprivation.'" *Id.* at 916–17 (describing involuntary termination of parental rights as "an extreme measure that is designed to be used as a last resort when all other reasonable efforts have failed") (quoting *Lassiter v. Dep't of Soc. Servs.*, 452 U.S. 18, 27 (1981)). Thus, "[w]hen the State seeks to terminate the parent-child relationship, *it must do so in a manner that meets the requirements of due process.*" *In re J.K.,* 30 N.E.3d 695, 699 (Ind. 2015) (quoting *In re G.P.*, 4 N.E.3d 1158, 1165 (Ind. 2014)) (emphasis added).

[9]     Due process embodies the idea of fundamental fairness and the "opportunity to be heard at a meaningful time and in a meaningful manner." *C.G.*, 954 N.E.2d at 917 (quoting *Mathews v. Eldridge*, 424 U.S. 319, 333 (1976)). Due process is "flexible and calls for such procedural protections as the particular situation demands." *Mathews*, 424 U.S. at 334 (quotation omitted). When determining the process due in a termination of parental rights proceeding, we balance three factors: (1) the private interests affected by the proceeding; (2) the risk of error created by the State's chosen procedure; and (3) the countervailing governmental interest supporting use of the challenged procedure. *C.G.*, 954 N.E.2d at 917. The balancing of these factors often turns on the risk of error created by DCS' actions and the trial court's actions because a parent's private interest in the care, custody, and control of his or her child and the State's

*parens patriae* interest in protecting the welfare of a child are both substantial. *Id.* at 917–18.

## 2. DCS Did Not Comply with the Indiana Trial Rules; Thus, the Trial Court Lacked Personal Jurisdiction Over Mother

In essence, Mother contends she was not served with a summons, the trial court lacked personal jurisdiction over her because of the lack of service, and the order terminating her parental rights was therefore void. "Ineffective service of process prohibits a trial court from having personal jurisdiction over a respondent." *In re J.H.*, 898 N.E.2d 1265, 1268 (Ind. Ct. App. 2009), *trans. denied.* A judgment rendered without personal jurisdiction over a defendant violates due process, is void, and may be attacked at any time. *Id.* And the existence of personal jurisdiction is a question of law entitled to *de novo* review. *Id.*

Whether process was sufficient to warrant exercise of personal jurisdiction over a party turns on two issues: (1) Was there compliance with the Indiana Rules of Trial Procedure regarding service; and (2) Did the attempts at service satisfy the Due Process Clause of the Fourteenth Amendment? *Id.*

A proceeding to terminate parental rights is essentially an *in rem* proceeding and as such is governed by the Indiana Rules of Trial Procedure. *Id.* Indiana Trial Rule 4.1 provides the following for service of process upon individuals:

> **(A) In General**. Service may be made upon an individual, or an individual acting in a representative capacity, by:

> (1) sending a copy of the summons and complaint by registered or certified mail or other public means by which a written acknowledgment of receipt may be requested and obtained to his residence, place of business or employment with return receipt requested and returned showing receipt of the letter; or
>
> (2) delivering a copy of the summons and complaint to him personally; or
>
> (3) leaving a copy of the summons and complaint at his dwelling house or usual place of abode; or
>
> (4) serving his agent as provided by rule, statute or valid agreement.
>
> **(B) Copy Service to Be Followed With Mail.** Whenever service is made under Clause (3) or (4) of subdivision (A), the person making the service also shall send by first class mail, a copy of the summons and the complaint to the last known address of the person being served, and this fact shall be shown upon the return.

[13] DCS first tried to serve Mother under Rule 4.1(A)(1) by sending a copy of the summons and complaint by certified mail to Mother's last known address in Ohio.[4] The summons and complaint were returned as undeliverable. *See King v. United Leasing, Inc.*, 765 N.E.2d 1287, 1290 (Ind. Ct. App. 2002) (explaining

---

[4] DCS contends, "Mother would have been informed in the underlying CHINS case that her failure to comply with services and to maintain contact with DCS could result in the termination of her parental rights." *Appellee's Br.* at 23. Of course, we hope this is true, but neither party has provided us with any indication that Mother was actually informed. A copy of the Parental Participation Plan was not made part of the appellate record and we were unable to access it in the Odyssey Case Management System.

unclaimed service is insufficient to establish a reasonable probability that a defendant received adequate notice and to confer personal jurisdiction); *see also Mills v. Coil*, 647 N.E.2d 679, 681 (Ind. Ct. App. 1995) (stating service upon a defendant's former residence is insufficient to confer personal jurisdiction), *trans. denied*. Service was not made under Rule 4.1(A)(1), so DCS pursued another method.

[14] Next, DCS requested permission to serve Mother by publication. Trial Rule 4.9—governing *in rem* proceedings—allows service of a summons to be made by publication. Under Rule 4.13, the person or entity seeking service by publication shall submit to the court a request for such service in a praecipe. *See* Ind. Trial Rule 4.13(A); *see also J.H.*, 898 N.E.2d at 1268. The praecipe shall be filed "*along with supporting affidavits that diligent search has been made*" and that the defendant cannot be found, has concealed her whereabouts, or has left the state. T.R. 4.13(A) (emphasis added); *see also Munster v. Groce*, 829 N.E.2d 52, 58–59 (Ind. Ct. App. 2005) (describing this portion of the rule as a presumptive requirement that a party swear to due diligence in attempting to locate an interested party before he or she may seek service by publication). We note that Rule 4.13 employs mandatory language of "shall" rather than the permissive language of "may." Therefore, it is not "merely a suggestion to counsel seeking service by publication to prepare these specific documents; it is a directive." *Harris v. Del. Cnty. Div., of Fam. & Child. Serv.*, 732 N.E.2d 248, 249 (Ind. Ct. App. 2000). Put differently, strict compliance with Rule 4.13 is required for service by publication.

[15] Here, the trial court granted DCS permission to serve Mother by publication. *See Appellant's App. Vol. 2* at 46–49. Upon review of the record, however, we cannot find any indication that DCS filed an affidavit of a diligent search alongside its praecipe, as required by Rule 4.13, even though the praecipe references the filing of an affidavit. Problematically, the trial court still granted DCS permission to serve Mother by publication. Further, DCS did not submit proof of published notice. *See* T.R. 4.13(E). At bottom, DCS' efforts fell well short of the requirements of Rule 4.13.

[16] Then, DCS attempted to serve Mother by giving a copy of the summons to Smith at Smith's home in Richmond, Indiana. DCS believes this method of service satisfied Rule 4.1(A)(3)—which permits serving an individual by leaving a copy of the summons and complaint at her dwelling house or usual place of abode—claiming "[s]ervice at [Smith's] home was reasonably calculated to render [Mother] service of process, and was thus the best method to inform Mother of the termination proceedings." *Appellee's Br.* at 19. In DCS' view, "it was reasonable for DCS to consider [Smith's] home Mother's 'usual place of abode' because Mother had often lived with [Smith] during the underlying CHINS case." *Id.* at 18. And DCS contends Smith "was acting as Mother's personal representative" when she accepted service on Mother's behalf. *Id.* at 12.

[17] We need not address whether DCS complied with Rule 4.1(A)(3), however, because DCS did not comply with Rule 4.1(B). Whenever service is made under Rule 4.1(A)(3), the party making service is also required to send a copy of

the summons and complaint to the last known address of the person being served. *See* T.R. 4.1(B). Confirmation of the additional mailing must be shown on the return. *See* T.R. 4.1(B). The purpose behind Rule 4.1(B) is to "increase the odds that the served party will receive timely notice of the suit." *Boczar v. Reuben*, 742 N.E.2d 1010, 1016 (Ind. Ct. App. 2001). Compliance with Rule 4.1(B) is "a jurisdictional prerequisite to obtaining personal jurisdiction." *Barrow v. Pennington*, 700 N.E.2d 477, 479 (Ind. Ct. App. 1998) (describing Rule 4.1(B) as "unambiguously mandatory"). In other words, "service of process in contravention of T.R. 4.1(B) is not sufficient to confer personal jurisdiction over a defendant." *LePore v. Norwest Bank Indiana, N.A.*, 860 N.E.2d 632, 635 (Ind. Ct. App. 2007) (quoting *Barrow*, 700 N.E.2d at 479).

[18] Technically insufficient service under Rule 4.1(B) may nevertheless be sufficient under Trial Rule 4.15(F) if the service is "reasonably calculated to inform the person to be served that an action has been instituted against [her]." T.R. 4.15(F). But Rule 4.15(F) "will not excuse noncompliance with trial rule 4.1(B)." *Barrow*, 700 N.E.2d at 479; *see also LaPalme v. Romero*, 621 N.E.2d 1102, 1106 (Ind. 1993) (explaining Rule 4.15(F) cures only technical defects in service of process, "not the total failure to serve process"); *see also In re C.C.*, __ N.E.3d __, 2023 WL 6979258, at *5, No. 23A-JT-848 (Ind. Ct. App. Oct. 24, 2023) (indicating "the 'savings provision' contained in Rule 4.15(F) is meant to excuse minor, technical defects in the method of service where actual service has been accomplished") (quotation omitted).

DCS concedes "there is no evidence in the record that DCS . . . sent the summons and petition to Mother's last known address as required by Trial Rule 4.1(B)." *Appellee's Br.* at 19. DCS contends noncompliance should not matter because the clerk had already sent a copy of the summons and complaint to Mother's last known address in Ohio and the attempt came back as undeliverable. But our case law indicates noncompliance with Rule 4.1(B) *does* matter. *See Barrow*, 700 N.E.2d at 479. The record lacks assurances that DCS sent a follow-up copy of the summons by first-class mail. And any such efforts were not indicated on the return. Said another way, DCS' complete failure to provide adequate proof of service is not a "minor defect" that can be cured by Rule 4.15(F). *See C.C.*, __ N.E.3d __, 2023 WL 6979258, at *5.[5]

In sum, Trial Rules 4–4.17 provide several methods DCS could have used to serve Mother with process. Because DCS failed to fully comply with any of its available options, the trial court never obtained personal jurisdiction over

---

[5] Mother's whereabouts were largely unknown at the time of the termination hearing. Mother (and Father) lived at Smith's home during various portions of the underlying CHINS case, but it is unclear whether she still lived there during the termination proceeding. For instance, Mother's counsel did not have a current address for Mother and had "not had contact with [Mother] for a substantial period of time." *Tr. Vol. 2* at 4. And DCS first sent a copy of the summons and complaint to Mother's last known address in Ohio before turning to Smith's home in Richmond, Indiana. Further, at the time DCS served Smith, DCS was investigating an unrelated CHINS matter involving Smith and her children, and found that Smith's methamphetamine use and pending drug-related criminal charges eliminated her as a viable placement option for A.B. Although this information does not affect our determination that DCS did not comply with Rule 4.1(B), it does shed light on the adequacy of serving Mother through Smith pursuant to Rule 4.1(A)(3).

Mother. The trial court's order terminating Mother's parental rights was therefore void.[6]

## Conclusion

[21] Put bluntly, the record is replete with procedural irregularities and demonstrates an overall lack of care and caution required in this type of proceeding. Significant and blatant service errors were overlooked by counsel and the trial court. Because Mother's due process rights were violated below and the trial court never obtained jurisdiction over Mother, we reverse and remand.

[22] Reversed and remanded.

Altice, C.J., and Weissmann, J., concur.

---

[6] In addition to complying with the Indiana Rules of Trial Procedure when a petition is filed, the person who filed the petition to terminate the parent-child relationship is required to send notice of the termination hearing at least ten days prior to the hearing date to a number of interested persons, including the parents. *See* I.C. § 31-35-2-6.5(b). Failure to comply with statutory notice, however, is a defense that must be asserted. *In re C.C.*, 170 N.E.3d 669, 675 (Ind. Ct. App. 2021). Although Mother did not raise this defense below, we note that the record reveals DCS did not comply with the notice requirements imposed by statute. This furthers our concern regarding the deprivation of Mother's due process rights below.