# MEMORANDUM DECISION

Pursuant to Ind. Appellate Rule 65(D), this Memorandum Decision shall not be regarded as precedent or cited before any court except for the purpose of establishing the defense of res judicata, collateral estoppel, or the law of the case.



**FILED**

Apr 14 2020, 8:43 am

**CLERK**
Indiana Supreme Court
Court of Appeals
and Tax Court

ATTORNEY FOR APPELLANT

Steven J. Halbert
Indianapolis, Indiana

ATTORNEYS FOR APPELLEE

Curtis T. Hill, Jr.
Attorney General of Indiana

Robert J. Henke
David E. Corey
Deputy Attorney General
Indianapolis, Indiana

IN THE

# COURT OF APPEALS OF INDIANA

In the Matter of:

K.Y. *(Minor Child)*
*Child in Need of Services*

and

M.Y. *(Mother)*,

*Appellant-Respondent,*

v.

The Indiana Department of
Child Services,
*Appellee-Petitioner,*

April 14, 2020

Court of Appeals Case No.
19A-JC-2582

Appeal from the Marion Superior
Court

The Honorable Marilyn Moores,
Judge

The Honorable Marcia J. Ferree,
Magistrate

Trial Court Cause No.
49D09-1904-JC-995

**Robb, Judge.**

# Case Summary and Issues

[1] M.Y. ("Mother") appeals the juvenile court's adjudication of her six-year-old daughter, K.Y. ("Child"), as a child in need of services ("CHINS").[1] Mother raises two issues for our review, which we reorder and restate as: 1) whether Indiana Code section 31-34-12-4 is unconstitutional on its face and as applied to Mother; and 2) whether the evidence raised a presumption under Indiana Code section 31-34-12-4 that Child is a CHINS and if so, whether Mother's evidence rebutted the presumption. Concluding the statute is not unconstitutional, the evidence was sufficient to raise the presumption, and Mother's evidence did not rebut the presumption, we affirm the CHINS adjudication.

# Facts and Procedural History

[2] On April 8, 2019, the Marion County office of the Indiana Department of Child Services ("DCS") received a report regarding possible physical abuse of Child. DCS assessment worker Lorien Wilkins met with Child at her elementary school on April 10 and observed bruising on her ear, a mark "like a line going down her face[,]" and bruises and marks on her right arm from shoulder to wrist. Transcript of Evidence, Volume II at 24. Wilkins took pictures of Child's injuries. Wilkins also met with Mother on April 10 (a Wednesday).

---

[1] Although Mother and Child's father share a last name, they do not appear to be married and do not live together. When these proceedings began, Child's father's whereabouts were unknown to the Department of Child Services. He was eventually notified and participated in the disposition hearing but does not participate in this appeal. We have limited our recitation of the facts to those pertinent to Mother.

Mother "stated that she had whooped the child the Saturday before. She stated that the child had . . . an attitude with her and that's what caused her to get a whooping." *Id.* Mother admitted striking Child four or five times with a belt over Child's clothes. Mother said Child was "moving around a lot" during the whooping. *Id.* However, Mother claimed that Child has eczema, a skin condition that causes her to scratch herself, and also claimed that Child bruises easily. Mother posited that the marks were either from Child scratching herself or from running into a table while on a hoverboard the day before and not from the "whooping" over the weekend. DCS requested documentation of Child's skin condition but Mother never provided it. DCS removed Child on an emergency basis at the end of her school day and placed her in foster care.

[3] On April 11, DCS requested and received permission to file a CHINS petition and to continue Child in DCS custody, and an initial hearing/detention hearing was held on April 12. DCS's primary concern was "inappropriate . . . discipline that left marks and bruises on the child." *Id.* at 25. The juvenile court found there was sufficient evidence to support Wilkins' preliminary inquiry and affidavit of probable cause that Child was a CHINS and that removal and continued detention were necessary to protect her. The juvenile court ordered supervised parenting time between Mother and Child and authorized DCS to provide Mother with any services in which she voluntarily wished to participate. Child was eventually placed in relative care.

[4] Visits between Mother and Child went "pretty well." *Id.* at 31. The supervised visit facilitator observed at least twelve visits and noted that Child enjoys the

visits and Mother and Child interact well.  She did observe one concerning incident when Mother raised her hand up and said, "I'm going to pop you[.]" *Id.* at 32.  Although Mother may have been joking—"it's not necessarily meaning that she's actually going to do it"— the facilitator noted that Child "flinch[ed] away" and she was concerned about Mother modeling violence in her interactions with Child.  *Id.* at 33, 35.  The facilitator noted that she would offer Mother a parenting curriculum "to work on ways to not use physical violence as a disciplinary measure."  *Id.* at 35.

[5]     At the fact-finding hearing in June, Mother admitted that she hit Child with a belt four or five times on her butt several days before DCS became involved, with "[c]lothes on and without using force," *id.* at 6, but denied that the marks on Child were from that incident.  Specifically, Mother noted that Child has skin issues, is clumsy and bruises easily, and also noted that she would never hit Child in the face, so "what they're saying I did is not from a belt."  *Id.* at 7. Mother described using a spectrum of discipline from merely talking through the issue to revoking privileges such as electronics, and stated that depending on what Child does, she thought hitting Child with a belt was an appropriate form of discipline, but "it takes a long time for me to discipline a child physically." *Id.* at 13.  DCS introduced three photographs that Wilkins had taken of Child on April 10; Mother described Exhibit 1 as showing "bruising on [Child's] ear from when she ran into the table and on the hover board[,]" *id.* at 16, Exhibit 2 as showing "two scratches [on Child's face] and then some dry skin[,]" *id.* at 17, and Exhibit 3 as showing marks on Child's arms because Child "has eczema

really bad and it leaves patches like this[,]" *id.*[2] Mother believed from training she received for her job as a youth specialist that "it's okay to discipline your child, but just don't leave bruises." *Id.* at 18. She did not feel she needed parenting education because she takes classes to stay in compliance with her foster parent license and for her job, where she works with kids.

[6] Marlee Dahn, the family case manager as of the time of the fact-finding hearing, testified that DCS could not recommend that Child be returned to Mother "until we have enough evidence that mom will be able to appropriately discipline her child." *Id.* at 42. She also noted that DCS recommended parenting education and home-based therapy to Mother. Mother was initially unwilling to do any services; she eventually relented as to parenting education but remained unwilling to participate in therapy.

[7] At the conclusion of DCS' presentation of evidence, Mother moved for a Trial Rule 41(B) dismissal, arguing DCS had not met its burden to prove that Child was a CHINS and that Mother had provided the only plausible explanation for Child's injuries. DCS responded that it believed it had met "all of the

---

[2] The pictures shown to Mother were apparently of low quality. *See id.* at 16 (Mother, when shown Exhibit 1 and asked what she sees, replying, "This picture is horrible. But from my understanding . . . it was bruising on her ear[.]"). The pictures in the exhibits volume provided to this court are also of very low quality. However, in its fact-finding order, the trial court described the exhibits:

> The pictures, exhibits 1 and 2, show 2 diagonal marks about 2 inches long and 1 inch apart and bruising on her cheek and around her right . . . ear. Further, exhibit 3, is a picture of the child's right arm that shows multiple marks spreading down most of the outside of her arm, from the shoulder down her forearm.

Appellant's Appendix, Volume II at 114.

requirements in the presumption statute under 31-34-12-4" and that creates a "rebuttable presumption that the child is a child in need of services, and then it's up to the parents to rebut that." *Id.* at 45. Mother responded that "to create that rebuttal rule of presumption," DCS needs to show the injury is likely not accidental and she did not believe DCS had done so. *Id.* at 45-46. The juvenile court denied Mother's motion.

[8] Mother then offered the testimony of her brother and adopted son, W.Y., and Child's paternal great-grandmother, J.L. W.Y. lives with Mother and Child. He has seen Mother spank Child twice, either with her hand or with a belt, always striking her on the butt, never in the face. He noted Mother usually takes Child's electronics away when she misbehaves, but when he saw her use corporal punishment, "she didn't use full force. It was just like to get her . . . to know that that's wrong and you shouldn't do that." *Id.* at 58. Both W.Y. and J.L. feel Child is safe in Mother's care.

[9] The trial court issued a Fact Finding Ruling adjudicating Child a CHINS:

> 19. There is no dispute that Mother whipped the Child just a few days before the assessment with a belt and that Mother struck her no less than 4-5 times.
>
> 20. There is also no dispute that at the time that the Child was injured, she was in the care, custody and control of Mother.
>
> 21. Further, there is no dispute that the Child had injuries by way of bruises on her right ear and cheek and bruises and marks on her right arm.

22. Considering the evidence, including but not limited to, the pictures and Mother's testimony that she hit the child with a belt multiple times just a few days before DCS' assessment, the Court finds there is [a] reasonable probability that the injuries were not accidental.

23. The Court finds that the presumption of Indiana Code 31-34-12-4 has been raised by the DCS in this case by competent evidence of probative value that the Child suffered injuries to her right ear, cheek and arm while in the care of her Mother and that the injuries would not ordinarily be sustained except for the act or omission of Mother.

24. Mother argues that she rebutted this presumption by presenting testimony that when she whipped the child with the belt she did not strike her face, testimony that it is not in her character to whip the child and that the Child scratches a lot. Further, she testified that she assumed that the marks on the Child's face was [sic] from the Child hitting a table.

* * *

31. To date, Mother has not provided the DCS with any documents to support her claims that the Child's injuries were caused by a skin condition.

* * *

36. Mother's evidence does not outweigh the preponderance of the evidence presented by the DCS or rebut the presumption raised by the DCS[.]

* * *

42. Therefore, pursuant to Indiana Code 31-34-12-4, there is a rebuttable presumption that the Child is a child in need of services, and that presumption has not been rebutted by the evidence. As such, the Court finds that the Child is a child in need of services.

Appellant's App., Vol. II at 114-16.

[10] At the disposition hearing, DCS asked for a parenting assessment to assist Mother in learning how to appropriately discipline Child and for home-based therapy to assist Mother in managing her anger. Johna Jones, the recently assigned family case manager, testified that Mother had agreed to voluntarily comply with those services but had not yet begun participating. Nikki Harris, visitation supervisor from July to October, testified, "Visits are really good. The interaction between mom and daughter, they go really well[.]" Tr., Vol. II at 74. Harris had not witnessed any safety concerns and did not think Mother needed ongoing supervised parenting time. At the conclusion of the hearing, the court ordered that Mother complete a parenting assessment and follow the recommendations from that assessment. "The Court finds that that service is rationally related in light of the fact-finding and what brought us here." *Id.* at 87. The Court also ordered temporary trial in-home visitation between Mother and Child, "contingent on [M]other complying with the parenting assessment and following any recommendations that come from that[.]" *Id.* Mother now appeals the adjudication of Child as a CHINS.

# Discussion and Decision

# I. Standard of Review

A CHINS proceeding is a civil action and thus, the State is required to prove by a preponderance of the evidence that a child is a CHINS as defined by statute. *In re K.D.*, 962 N.E.2d 1249, 1253 (Ind. 2012). A preponderance of the evidence is "simply . . . the greater weight of the evidence." *Kishpaugh v. Odegard*, 17 N.E.3d 363, 373 (Ind. Ct. App. 2014) (quotation omitted). On appellate review of a juvenile court's determination that a child is in need of services, we do not reweigh the evidence or judge the credibility of the witnesses. *In re S.D.*, 2 N.E.3d 1283, 1286 (Ind. 2014). Rather, we consider only the evidence supporting the juvenile court's decision and any reasonable inferences arising therefrom. *Id.* at 1287. We apply a two-tiered standard of review to the juvenile court's findings of fact and conclusions thereon: we first consider whether the evidence supports the findings and then whether the findings support the judgment. *In re A.M.*, 121 N.E.3d 556, 561 (Ind. Ct. App. 2019), *trans. denied*. We will set aside the findings and conclusions only if they are clearly erroneous and our review of the record leaves us firmly convinced a mistake has been made. *Id.*

# II. Elements of a CHINS Adjudication

"[T]he purpose of a CHINS adjudication is to protect children, not punish parents." *In re N.E.*, 919 N.E.2d 102, 106 (Ind. 2010). Accordingly, a CHINS adjudication focuses on the child's condition and status, and a separate analysis as to each parent (or guardian) is not required at the CHINS determination

stage. *Id*. at 105-06. There are three basic elements DCS must prove for a juvenile court to adjudicate a child a CHINS: that the child is under eighteen years of age; one or more of the statutory circumstances outlined in Indiana Code sections 31-34-1-1 through 11 exists; and the care, treatment, or rehabilitation required to address those circumstances is unlikely to be provided or accepted without the coercive intervention of the court. *Id*. at 105.

[13] In this case, DCS alleged that Child was a CHINS pursuant to Indiana Code sections 31-34-1-1 and 31-34-1-2. To meet its burden under section 31-34-1-1, DCS was required to prove that the child is under age eighteen,

> (1) the child's physical or mental condition is seriously impaired or seriously endangered as a result of the inability, refusal, or neglect of the child's parent, guardian, or custodian to supply the child with necessary food, clothing, shelter, medical care, education, or supervision; and
>
> (2) the child needs care, treatment, or rehabilitation that:
>
> (A) the child is not receiving; and
>
> (B) is unlikely to be provided or accepted without coercive intervention of the court.

Ind. Code § 31-34-1-1 (2005).[3] DCS also alleged Child was a CHINS pursuant to Indiana Code section 31-34-1-2, which requires the State prove a child is under eighteen and:

> (1) the child's physical or mental health is seriously endangered due to injury by the act or omission of the child's parent, guardian, or custodian; and
>
> (2) the child needs care, treatment, or rehabilitation that:
>
>> (A) the child is not receiving; and
>>
>> (B) is unlikely to be provided or accepted without the coercive intervention of the court.

[14] However, DCS invoked Indiana Code section 31-34-12-4 (the "Presumption Statute") pursuant to which a rebuttable presumption is raised that the child is in need of services because of an act or omission of the child's parent, guardian, or custodian if competent evidence of probative value is introduced by DCS that:

> (1) the child has been injured;

---

[3] Effective July 1, 2019, the CHINS statute was amended to include the following under subsection (1): "(A) when the parent, guardian, or custodian is financially able to do so; or (B) due to the failure, refusal, or inability of the parent, guardian, or custodian to seek financial or other reasonable means to do so[.]" Because DCS filed its CHINS petition prior to this amendment, the previous version quoted above applies here. In any event, the arguments in this case do not implicate the amendment.

(2) at the time the child was injured, the parent, guardian, or custodian:

    (A) had the care, custody, or control of the child; . . .

(3) the injury would not ordinarily be sustained except for the act or omission of a parent, guardian, or custodian; and

(4) there is a reasonable probability that the injury was not accidental.

Once this showing is made, the rebuttable presumption that a child is a CHINS applies to all the statutory CHINS elements in chapter 1, including the "coercive intervention" element. *Ind. Dep't of Child Servs. v. J.D.*, 77 N.E.3d 801, 809 n.3 (Ind. Ct. App. 2017), *trans. denied*.

## A. Constitutionality of the Presumption Statute

[15] We begin by addressing Mother's contention that Indiana Code section 31-34-12-4 is unconstitutional on its face and as applied because it "creates a lesser standard of proof" and "effectively puts the burden on the parent to prove no abuse" occurred. Brief of Appellant at 13, 15. And indeed, the purpose of the Presumption Statute is clear: "[i]n cases where a child has injuries that suggest neglect or abuse, it shifts the burden to the party most likely to have knowledge of the cause of the injuries—the parent, guardian, or custodian—to produce evidence rebutting the presumption that the child is a CHINS." *J.D.*, 77 N.E.3d at 807.

[16] DCS argues we need not address Mother's arguments about the constitutionality of this statute because Mother did not first raise the issue in the juvenile court. We agree Mother did not raise the issue below, and we give no credence to Mother's attempt at explaining that omission by noting her trial counsel "did request dismissal for failure to meet the required burden of proof" and had no way of knowing the juvenile court would decide the issue based on the Presumption Statute. Br. of Appellant at 14 n.3. We reject those arguments for two reasons. One, as Mother herself acknowledges, the Presumption Statute was clearly referenced in the CHINS petition as a ground for a CHINS finding, and the parties discussed DCS' burden of proof under that statute when Mother moved for a dismissal. Mother's argument for dismissal essentially conceded the Presumption Statute could apply but argued DCS simply failed to prove the elements. Two, requesting a 41(B) dismissal for failure to meet the burden of proof is in no way similar or alternative to arguing the constitutionality of the statute setting forth the burden of proof. However, even though the general rule is that failure to challenge the constitutionality of a statute in the court below results in waiver of review of the issue on appeal, appellate courts are not thereby prohibited from considering the constitutionality of a statute even though the issue has otherwise been waived. *Plank v. Cmty. Hosps. of Indiana, Inc.*, 981 N.E.2d 49, 53-54 (Ind. 2013). We therefore decline to decide this issue on waiver alone.

[17] Like other statutes creating rebuttable presumptions, the Presumption Statute applicable to CHINS proceedings does not affect the burden of proof, it simply

shifts the burden of going forward with evidence to, in this case, the parent. *See, e.g., Donaldson v. State*, 904 N.E.2d 294, 299-300 (Ind. Ct. App. 2009) (addressing statute creating rebuttable presumption of knowledge of suspension of driving privileges if State proves notice of suspension was mailed to defendant's last known address); *Keyes v. State*, 559 N.E.2d 1216, 1218 (Ind. Ct. App. 1990) (addressing statute creating rebuttable presumption that persons found to have a certain blood alcohol content within a certain time had that level of blood alcohol when driving). In *Chilcutt v. State*, this court stated:

> The legislature may enact laws declaring that, on proof of one fact, another fact may be inferred or presumed, and such enactments are constitutional, provided no constitutional right of [sic] accused is destroyed thereby, the presumption is subject to rebuttal, and there is some rational connection between the fact proved and the ultimate fact presumed.

544 N.E.2d 856, 858 (Ind. Ct. App. 1989) (quoting 22A C.J.S. Criminal Law § 579). Although *Chilcutt* (and *Donaldson* and *Keyes*) were addressing criminal statutes, the same principles apply here. *See Mogilner v. Metro. Plan Comm'n of Marion Cty.*, 236 Ind. 298, 309, 140 N.E.2d 220, 225 (1957) (stating, in a civil context, that "[i]t is well established that statutes which make evidentiary facts prima facie of certain ultimate facts, otherwise described as rebuttable presumptions created by statute, are valid"). DCS has an obligation to first prove every element in the Presumption Statute. There is a rational connection between the facts proved—that a child has suffered a likely non-accidental injury while in the parent's care that would not ordinarily have occurred

without the parent's act or omission—and the fact presumed—that the child is a CHINS, and the parent has the opportunity to rebut the presumption by presenting evidence to the contrary.  It is not, therefore, unconstitutional.

## B.  Application of the Presumption Statute

[18]   Mother challenges DCS' evidence as insufficient to raise the presumption at all. DCS "need only produce some relevant and admissible evidence tending to establish the elements of the Presumption Statute in order to shift the burden of production" to Mother.  *J.D.*, 77 N.E.3d at 809.  Consistent with the juvenile court's findings, DCS presented evidence that Child sustained injuries to her face and arm; Mother intentionally hit Child with a belt four or five times; Child was in Mother's care at all relevant times; the injuries would not have been sustained but for Mother's act of hitting Child with the belt; and there was a reasonable probability that the injury was not accidental because Mother admitted that she had intentionally struck Child.  Mother specifically challenges the evidence supporting the elements that the injuries would not have been sustained but for Mother's act and that the injuries were likely not accidental, claiming the lack of medical evidence as to those elements means the juvenile court engaged in speculation in concluding those elements were proven.[4] However, although cases have noted medical evidence that was introduced by

---

[4] DCS never took Child to a doctor, but did a "peds referral," sending the pictures of Child's injuries to a doctor to determine a "plausible cause of what these marks and bruises are . . . or how they could happen." Tr., Vol. II at 28-29.  A doctor did provide an opinion, but that was not introduced into evidence at the fact-finding hearing.

DCS, no case has said medical evidence is categorically required. *See In re D.F.*, 83 N.E.3d 789, 796 (Ind. Ct. App. 2017) (holding the rebuttable presumption applied where mother struck child repeatedly in the face and head causing swelling to child's face without medical evidence linking the mother's intentional act to the injury or stating the cause of the injury was non-accidental). Mother admitted she struck Child multiple times. Expert medical evidence is hardly required to make the connection. Therefore, the rebuttable presumption arose that Child was a CHINS.

[19] In addition, the juvenile court could have reasonably concluded that Mother failed to rebut this presumption because although Mother claimed Child had a skin condition, she never provided any medical documentation supporting that assertion. The juvenile court was not obligated to credit Mother's explanations that Child was clumsy and had fallen off a hoverboard and hit a table at virtually the same time Mother admitted to hitting Child with a belt and that the fall caused the injuries rather than the discipline. The juvenile court was in the best position to evaluate the evidence and determined that Mother's evidence of how Child's injuries were caused was not credible. As we do not reweigh the evidence or judge the credibility of the witnesses and considering the evidence supporting the juvenile court's decision, *see In re S.D.*, 2 N.E.3d at 1286-87, we cannot say the juvenile court erred in finding DCS' evidence raised the presumption that Child was a CHINS and that Mother's evidence failed to rebut that presumption.

[20] Even if the rebuttable presumption had not been met or had been rebutted, we would still conclude that sufficient evidence sustained the juvenile court's determination that Child was a CHINS. The aim of a CHINS inquiry is to determine if a child's circumstances require services that are unlikely to be provided absent court intervention. *Matter of E.Y.*, 126 N.E.3d 872, 877 (Ind. Ct. App. 2019). Here, Mother believed corporal punishment was acceptable as long as she did not leave bruises. We are mindful, of course, that corporal punishment is legal in the State of Indiana. *See* Ind. Code § 31-34-1-15 ("This chapter does not . . . [l]imit the right of a parent . . . to use reasonable corporal punishment when disciplining [a] child."). However, such punishment must be *reasonable*, and the fact that Child sustained bruises suggests the discipline was otherwise in this case. Mother would not voluntarily participate in the services recommended by DCS, including a parenting assessment and home-based therapy intended to help her with anger management and appropriate discipline, as she did not believe she needed such services. Therefore, DCS' evidence proved the elements of Indiana Code section 31-34-1-2: Child's physical or mental health is seriously endangered by Mother's acts and the care, treatment, or rehabilitation needed to address this is unlikely to be provided or accepted without the coercive intervention of the court.

# Conclusion

The Presumption Statute is not unconstitutional and the juvenile court's adjudication of Child as CHINS was not clearly erroneous. The juvenile court's order is therefore affirmed.

Affirmed.

May, J., and Vaidik, J., concur.