

# IN THE
# Court of Appeals of Indiana

In re the Supervised Estate of Robert Thompson, Deceased, Tammi Stodghill,

*Appellant-Respondent*



FILED
Jun 12 2026, 8:53 am
CLERK
Indiana Supreme Court
Court of Appeals
and Tax Court

v.

Bradley Thompson as the Personal Representative of the Estate of Robert Thompson,

*Appellee-Petitioner*

---

June 12, 2026

Court of Appeals Case No.
25A-ES-1629

Appeal from the Grant Superior Court

The Honorable Jason McVicker, Judge

Trial Court Cause No.
27D03-2403-ES-000007

---

**Opinion by Judge Felix**

Judges May and Mathias concur.

**Felix, Judge.**

## Statement of the Case

Robert Thompson suffered from dementia, and weeks before his death, his son Michael Thompson transferred several of Robert's properties to Michael's mother, Tammi Stodghill. Michael was originally appointed personal representative of Robert's estate (the "Estate"), but at a hearing before Stodghill was made a party, the trial court removed Michael from that position and determined that the property transfers were fraudulent. At an ensuing hearing after Stodghill intervened, the trial court ordered the properties to be returned to the Estate. Stodghill now appeals and presents three issues for our review:

1. Whether Stodghill's absence at the first hearing before she intervened requires reversal of the trial court's fraudulent-transfer finding;
2. Whether the trial court abused its discretion by excluding certain evidence; and
3. Whether the trial court abused its discretion by "refusing to order" an attorney-witness to testify.

We affirm.

## Facts and Procedural History

Robert Thompson was a farmer and business owner in Grant County, Indiana. In his younger years, Robert married and had two children, Bradley and

Susan.[1]  After his wife passed, Robert found companionship with Stodghill. The two did not marry but lived together for more than thirty years until Robert's death in 2023.  During this time, Robert and Stodghill had two children, Michael and Carri Jo.  The blended family produced tension between Robert's marital children and his children with Stodghill.

[4]  In early 2019, Robert was 79 years old.  Robert's health was declining, and he was becoming "more forgetful."  Appellant's App. Vol. II at 178.  Later that year, Robert executed a will (1) naming Michael as his personal representative; and (2) directing that his estate be divided equally between Michael, Carri Jo, Bradley, and Susan.  Robert also designated Michael as his attorney-in-fact under a durable power of attorney.

[5]  By 2022, Robert was unable to recognize Carri Jo, and in 2023, he was diagnosed with dementia.  On December 11 and 13, 2023, Michael, acting as Robert's attorney-in-fact, transferred seven properties Robert owned, including Robert's residence and rental properties, to Stodghill.  On December 23, Robert died.

[6]  The Estate was the beneficiary of Robert's life insurance policy, from which proceeds of $74,900.10 were disbursed after his death.  Although the probate court had not yet formally appointed Michael as personal representative of the Estate, Michael obtained a check for the proceeds and endorsed it as the

---

[1] Robert's will mentions another daughter, Debbie Bobson, whom Robert disinherited.

Estate's personal representative. Michael told Carri Jo that he planned to split the proceeds "three ways" between her, himself, and Stodghill. Tr. Vol. II at 41. Michael did not deposit the check into a separate bank account for the Estate but instead deposited it into an account he formerly held jointly with Robert and, following Robert's death, now held individually. Michael wrote checks to himself, his wife, his attorney, and Stodghill from the account. By August 2024, nearly all the proceeds had been spent.

[7] On March 12, 2024, Michael petitioned the court to admit the will to probate and confirm his appointment as personal representative. That same day, Bradley filed a competing petition seeking his own appointment as personal representative. On April 5, without holding a hearing, the trial court issued an order appointing Michael as personal representative of the Estate.

[8] On April 8, Bradley filed a motion to reconsider Michael's appointment as personal representative. Bradley alleged, in part, that Michael violated his fiduciary duties while serving as Robert's attorney-in-fact.[2] The trial court did not rule on this motion but noted in the Chronological Case Summary that it would "consider a request to remove Personal Representative, if filed." Appellant's App. Vol. II at 8.

---

[2] After Bradley filed his motion to reconsider Michael's appointment as personal representative, Michael filed a "Petition to Disinherit" Bradley, Appellant's App. Vol. II at 8, which petitioned the trial court to declare that Bradley forfeited his bequest by opposing Michael's appointment as personal representative. The trial court denied that motion, and it is not at issue in this appeal.

[9] On November 11, Bradley filed an emergency petition for removal of Michael as personal representative. Bradley alleged that Michael (1) while acting as Robert's attorney-in-fact, "altered" the Estate plan and "fraudulently transferred" the seven properties to Stodghill, Appellant's App. Vol. II at 73; (2) "fraudulently claimed" to be the personal representative of the Estate to obtain the life insurance proceeds, which he then "conver[ted]," *id.* at 72; (3) operated Robert's businesses without court approval and "commingled business funds with his own," *id.* at 73; (4) sold Estate property and "terminated income producing leases" without court approval and without informing other interested parties, *id.* at 74; (5) failed to file an inventory of the Estate; and (6) was being held in contempt in a separate case for failing to file an accounting of his transactions while serving as attorney-in-fact.

[10] On January 10, 2025, the trial court held a hearing on the emergency petition (the "January Hearing"), at which Michael, Bradley, and Carri Jo appeared. Relevant for this appeal, Stodghill had not yet been joined as a party, and she did not appear at the hearing. Bradley and Carri Jo presented evidence in support of the allegations contained in Bradley's petition. In particular, Carri Jo presented a recorded conversation between her, Michael, and Stodghill regarding the property transfers. When Stodghill was asked in the recording why she and Michael had the properties taken out of the Estate, Stodghill said, "Michael wanted me to put it in my name so we could put it in a trust for all of you . . . so you guys wouldn't lose everything to Bradley and Susie. That's exactly how he said it." Bradley Thompson Ex. I at 5:07-5:19.

[11] Following the hearing, the trial court issued an order finding that Michael's property transfers were "fraudulent" and made "with the intent of removing said real property from the Estate in order to deprive beneficiaries of the Will from receiving their share of the value of said real property." Appellant's App. Vol. II at 115. The trial court removed Michael as personal representative and appointed Bradley as such.

[12] On January 15, Bradley filed a motion as personal representative "to return improperly transferred real property" to the Estate. Appellant's App. Vol. II at 117. Bradley requested return of four of the seven properties Michael transferred (the "Disputed Properties"); Bradley did not seek return of the other three properties because Stodghill had owned them in joint tenancy with Robert and inherited them as his survivor. On January 17, the court issued a summons to Stodghill as the "recorded owner" of the Disputed Properties. *Id.* at 138. On January 24, Stodghill filed a motion to "intervene in the[] proceedings and answer as to her interest in the real estate," *id.* at 143, which the trial court granted.

[13] On May 28, the trial court held a hearing on the motion for return of the Disputed Properties (the "May Hearing"), at which Stodghill appeared. Bradley argued that the trial court had "already determined" that the property transfers were fraudulent based on the trial court's order removing Michael as personal representative. Tr. Vol. II at 75. Stodghill argued that, notwithstanding the trial court's order, she "was a necessary part[y] and should've been given notice and opportunity to argue" at the January Hearing.

*Id.* Speaking from the bench, the trial court explained that it had determined the property transfers were fraudulent but was willing to hear additional evidence regarding the motion to return the Disputed Properties:

> [T]he answer to the question is found in the order from [the] January 10th, 2025 hearing, and it [says] shortly before the death of [Robert,] Michael Thompson made fraudulent transfers of real property with intent of removing said real property from the estate in order to deprive beneficiaries of the . . . will from receiving their share of the value of said real property. That's the answer to the question. . . . I'm ready to hear from whomever the parties want the Court to hear from, but the Court's not gonna back off of its . . . court order. . . . Now if there's more information, more evidence, more testimony[,] bring it on. The Court just wants to make its best and most well[-]informed decision, but that is certainly uh, the Court's order.

Tr. Vol. II at 76.

[14] Stodghill then presented evidence that Robert included her on insurance policies for some of his properties. Stodghill and Michael also sought to offer testimony as well as from Darrell Horton, Shirley Haynes, Brian Morris, and Jared Taylor—friends and acquaintances of Robert—to the effect that Robert intended to transfer property to Stodghill in lieu of leaving it to the Estate. Bradley objected on the grounds that (1) Stodghill's and Michael's testimony was inadmissible hearsay and precluded under Indiana's Dead Man's Statute; and (2) the remaining witnesses' testimony was inadmissible hearsay. The trial court sustained the objections and excluded the testimony, which Stodghill then presented as an offer of proof.

Stodghill also called as a witness Michael's attorney, Nicholas Podlaski, who provided legal consultation to Robert in connection with his estate planning. Stodghill sought to ask Podlaski about his conversations with Robert. Podlaski was concerned that this testimony would constitute an ethical violation under Indiana Professional Conduct Rule 3.7,[3] so he attempted to contact the Indiana Disciplinary Commission; sought "guidance from the Court," Tr. Vol. II at 126; and objected to Stodghill questioning him. The trial court noted this was "an issue of first impression for this Court" and directed Podlaski to "address" questions "however you believe appropriate." *Id.* at 157. Podlaski then testified that he met with Robert, but when asked if the conversations related to the Estate, Bradley objected on the grounds that the testimony was hearsay and protected by attorney-client privilege. The trial court sustained the hearsay objection. Stodghill then submitted as an offer of proof that Podlaski would have testified that Robert "expressed a desire that the properties that were transferred to [Stodghill were] transferred to her in consideration of the fact that they lived together for thirty years and have two kids together."[4] Tr. Vol. II at 160–61.

---

[3] Indiana Professional Conduct Rule 3.7(a) provides as follows:

> A lawyer shall not act as advocate at a trial in which the lawyer is likely to be a necessary witness unless:
>
>   (1) the testimony relates to an uncontested issue;
>
>   (2) the testimony relates to the nature and value of legal services rendered in the case; or
>
>   (3) disqualification of the lawyer would work substantial hardship on the client.

[4] Attorney Podlaski met with Robert in April and June of 2023. Michael transferred the properties to Stodghill in December 2023. Thus, although Stodghill characterized Robert's conversation with Podlaski as

[16]     At the conclusion of the hearing, the trial court stated, "Nothing I've heard here today has assuaged my deep and abiding belief that shortly before the death of [Robert], Michael Thompson made fraudulent transfers of real property with the intent of removing said real property from the estate in order to deprive beneficiaries of the will in receiving their share of the value of said real property." Tr. Vol. II at 230. The trial court accordingly issued an order granting Bradley's motion for return of the Disputed Properties. This appeal ensued.

## Discussion and Decision

### 1. Stodghill's Absence at the January Hearing Does Not Require Reversal of the Trial Court's Fraudulent-Transfer Finding

[17]     Stodghill first argues that the trial court erred[5] by finding that the property transfers were fraudulent because she was a "necessary party" but was not joined as a party for the January Hearing where the trial court made its original fraudulent-transfer finding.[6] Appellant's Br. at 24. The Indiana Trial Rules do

---

regarding properties Robert "transferred" to Stodghill, Tr. Vol. II at 160, the property transfers had not yet occurred.

[5] Stodghill notes in her Appellant's Brief that a trial court's decision regarding joinder of a party is reviewed under the "abuse of discretion standard." Appellant's Br. at 15 (quoting *Ball State Univ. v. Irons*, 27 N.E.3d 717, 722 (Ind. 2015)). Here, we are not reviewing a decision regarding joinder—and we do not employ the accompanying abuse of discretion standard—because Stodghill intervened in the action, which no one now contests.

[6] Stodghill makes clear in her brief that she does not "argu[e] there is insufficient evidence" that the property transfers were fraudulent, but only that she "had a right to be in the case from the beginning so that [she] could present [her] arguments to the court." Appellant's Br. at 24. We therefore do not address whether the trial court's fraudulent-transfer finding rests on adequate support in the record.

not use the term "necessary party." *See Gibson v. Miami Valley Milk Producers, Inc.*, 157 Ind. App. 218, 232–233, 299 N.E.2d 631, 639–40 (Ind. Ct. App. 1973) (quoting cmt. to Civil Code Study Commission 2 HARVEY IND. PRACTICE at 247) (discussing adoption of the Trial Rules and their renewed focus on whether a party is "indispensable"). Instead, Trial Rule 19(A) provides in relevant part that "[a] person who is subject to service of process shall be joined as a party in the action if . . . he claims an interest relating to the subject of the action and is so situated that the disposition of the action in his absence may . . . as a practical matter impair or impede his ability to protect that interest." Ind. Trial Rule 19(A)(2)(a). When such a party "has not been so joined, the court shall order that he be made a party." *Id.* 19(A).[7]

[18] Stodghill has already been made a party by intervention, so nonjoinder is not at issue. *See Est. of Bichler ex rel. Ivy v. Bichler*, 183 N.E.3d 316, 323 (Ind. Ct. App. 2022). The issue is whether Stodghill's absence at the January Hearing before she intervened requires reversal of the trial court's fraudulent-transfer finding. In *Charnas v. Est. of Loizos*, 822 N.E.2d 181, 183–84 (Ind. Ct. App. 2005), the trial court issued a default judgment ordering stock brokerage firms to divest Argy Charnas from an account she held jointly with her aunt Georgia Loizos. Charnas was not a party to the default judgment action, but after the account

---

[7] Trial Rule 19(B) provides that, when joinder of a person described in Trial Rule 19(A) is not feasible, the trial court may find that the person is "indispensable and dismiss the action if he is not subject to process." Trial Rule 19(B) is not applicable here because Stodghill successfully intervened, so her joinder cannot be described as infeasible. *See Est. of Bichler ex rel. Ivy v. Bichler*, 183 N.E.3d 316, 323 n.4 (Ind. Ct. App. 2022).

was liquidated, she filed a separate action in Greece for half of the proceeds. *Id.* at 184. Charnas then challenged the default judgment on the grounds that she was an indispensable party and the failure to join her rendered the judgment void. *Id.* at 187. This court affirmed the default judgment because Charnas's "absence" did not "prevent her from protecting" her purported interest in the proceeds in the Greek suit. *Id.*

[19] Here, as in *Charnas*, Stodghill's absence at the January Hearing before she intervened did not prevent her from protecting her purported interest in the properties at the May Hearing. Stodghill argues that, had she been a party at the January Hearing, she would have (1) presented evidence that the property transfers were "pursuant to [Robert's] wishes," Appellant's Br. at 20; (2) presented evidence that she was listed on Robert's insurance "for the house," *id.* at 21; and (3) had an opportunity to "cross-examine witnesses who were present and testified at the earlier hearing," *id.* Stodghill had the chance to do all of these things at the May Hearing. Stodghill presented evidence that Robert intended to transfer the properties to her; that she was listed as insured on some of Robert's properties; and she had the opportunity to cross-examine Michael, Bradley, and Carri Jo, who were the only witnesses at the January Hearing. Although much of Stodghill's evidence at the May Hearing was excluded under the Dead Man's Statute and as inadmissible hearsay, the evidence would have been excludable on these grounds at the January Hearing even if Stodghill had attempted to present it at that time. *See infra* Part 2.

[20] Stodghill also argues that she should have had the chance to present her case at the January Hearing "before the court made its decision." Appellant's Br. at 21. The trial court at the January Hearing found that the property transfers were fraudulent, but it did not order any properties to be returned to the Estate.

[21] Moreover, at the May Hearing, the trial court explained that although it previously found that the property transfers were fraudulent, it was willing to hear "more information, more evidence, more testimony" so that it could make "its best and most well[-]informed decision." Tr. Vol. II at 76. After hearing the evidence and argument presented, the trial court stated that "[n]othing [it] heard here today has assuaged [its] deep and abiding belief" that the property transfers were fraudulent. *Id.* at 230. In sum, the fact that Stodghill was not joined at the January Hearing does not require reversal of the trial court's fraudulent-transfer finding because the trial court later reaffirmed that finding after Stodghill was given a full chance to be heard.[8]

---

[8] Stodghill also argues that she "had due process rights under the U.S. Constitution's 5th and 14th Amendments to present her evidence and arguments before a decision was made" regarding the property transfers. Appellant's Br. at 24. At the May Hearing, Stodghill argued that she was "a necessary part[y] and should've been given notice and opportunity to argue" at the January Hearing, Tr. Vol. II at 75, but Stodghill did not raise an argument under the due process clause of the United States Constitution. Stodghill makes this argument for the first time on appeal. It is well established that issues raised for the first time on appeal are waived, including constitutional issues. *Hite v. Vanderburgh Cnty. Off. of Fam. & Child.*, 845 N.E.2d 175, 180 (Ind. Ct. App. 2006) (citing *McBride v. Monroe Cnty. Off. of Fam. & Child.*, 798 N.E.2d 185, 194 (Ind. Ct. App. 2003)); *see Plank v. Cmty. Hosps. of Ind., Inc.*, 981 N.E.2d 49, 53 (Ind. 2013) ("[A]ppellate review presupposes that a litigant's arguments have been raised and considered in the trial court."). Moreover, Stodghill fails to support her due process argument with citations to authority. *See* Ind. Appellate Rule 46(A)(8)(a) (requiring arguments be supported with "citations to the authorities [and] statutes . . . relied on").

Waiver notwithstanding, "[p]rocedural due process requires 'the opportunity to be heard at a meaningful time and in a meaningful manner.'" *In re B.W.*, 266 N.E.3d 744, 753 (Ind. Ct. App.) (quoting *In re K.D.*, 962 N.E.2d 1249, 1257 (Ind. 2012)), *trans. denied sub nom. A.P. v. Ind. Dep't of Child Servs.*, 270 N.E.3d 958 (Ind.

## 2. The Trial Court Did Not Abuse Its Discretion by Excluding Certain Evidence

[22] Stodghill next argues that the trial court abused its discretion by excluding testimony regarding Robert's intentions as to ownership of his properties. We generally review evidentiary rulings for an abuse of discretion. *Russell v. State*, 234 N.E.3d 829, 858 (Ind. 2024) (quoting *Conley v. State*, 972 N.E.2d 864, 876 (Ind. 2012)), *cert. denied*, 145 S. Ct. 424 (2024). "[W]e may affirm the trial court's decision on any basis supported by the record," *Means v. State*, 201 N.E.3d 1158, 1163 (Ind. 2023) (citing *Ramirez v. State*, 174 N.E.3d 181, 190 n.2 (Ind. 2021)), and we will reverse "only where the decision is clearly against the logic and effect of the facts and circumstances," *Russell*, 234 N.E.3d at 858 (quoting *Smith v. State*, 754 N.E.2d 502, 504 (Ind. 2001)).

[23] Stodghill claims that the trial court abused its discretion by (a) excluding Stodghill's and Michael's testimony under the Dead Man's Statute, and (b) excluding the remaining witnesses' testimony as hearsay. We address each claim in turn.

### a. Stodghill's and Michael's Testimony—Dead Man's Statute

[24] The Dead Man's Statute applies in suits or proceedings "(1) in which an executor or administrator is a party; (2) involving matters that occurred during the lifetime of the decedent; and (3) where a judgment or allowance may be

---

2025). Because Stodghill was given a full chance to be heard at the May Hearing before the Disputed Properties were ordered to be returned to the Estate, her due process rights were not violated.

made or rendered for or against the estate represented by the executor or administrator." Ind. Code § 34-45-2-4(a). As relevant here, the Dead Man's Statute provides that a person "(1) who is a necessary party to the issue or record; and (2) whose interest is adverse to the estate" is "not a competent witness as to matters against the estate." *Id.* § 34-45-2-4(d). This provision reflects "a matter of legislative policy that claimants to the estate of a deceased person should not be permitted to present a court with their version of their dealings with the decedent." *In re Est. of Rickert*, 934 N.E.2d 726, 731 (Ind. 2010) (citing *In re Est. of Neu,* 588 N.E.2d 567, 569 (Ind. Ct. App. 1992)). In this way, the statute "guards against false testimony by requiring that, when the lips of one party to a transaction are closed by death, the lips of the other party are closed by law." *Id.* (quoting *Est. of Neu,* 588 N.E.2d at 569).

[25] Stodghill's challenge to the exclusion of her and Michael's testimony consists mainly of a recitation of the objections made and responses thereto during the May Hearing. To the best of our understanding, Stodghill argues that neither Stodghill's nor Michael's testimony should have been excluded under the Dead Man's Statute because neither of them holds an "interest adverse to the estate," I.C. § 34-45-2-4(d)(2). As to herself, Stodghill argues that because the properties were transferred prior to Robert's death, she "ha[s] no claim against [Robert's] estate," Appellant's Br. at 27; as to Michael, she argues he "gets a fourth of the property if the estate wins," so "his interest is consistent with the estate's," *id.* at 30 (quoting Tr. Vol. II at 87).

"An adverse interest that would render a witness incompetent" under the Dead Man's Statute "is one by which the witness will gain or lose by the direct, legal operation of the judgment. 'The interest must be real, present, certain, and vested.'" *In re Unsupervised Est. of Harris*, 876 N.E.2d 1132, 1136 (Ind. Ct. App. 2007) (quoting *Morfin v. Est. of Martinez,* 831 N.E.2d 791, 798 (Ind. Ct. App. 2005)). Here, the trial court was deciding a motion to return the Disputed Properties from Stodghill to the Estate. Stodghill thus held an interest adverse to the Estate. As for Michael, Carri Jo's recording established that his plan was to remove the properties from the Estate and place them into a trust for only himself, Stodghill, and Carri Jo. Michael never contested this was his plan. The trial court thus was within its discretion to find Stodghill's and Michael's interests adverse to the Estate, and the trial court did not abuse its discretion by excluding Stodghill's and Michael's testimony.[9]

### b. Remaining Witnesses—Hearsay

Stodghill also argues that the trial court abused its discretion by excluding as hearsay the testimony from Horton, Haynes, Morris, and Taylor. Hearsay is an out-of-court statement offered for "the truth of the matter asserted." Ind. Evidence Rule 801(c). Hearsay is generally not admissible as evidence. *Id.* 802.

---

[9] Stodghill also argues that Michael's testimony regarding Robert's intentions should have been admitted because the testimony was not offered "for the truth of the matter" but because it "establish[ed] [Michael's] belief that [Robert] truly did want [Stodghill] to have th[e] properties." Appellant's Br. at 31. In other words, the testimony was not necessarily hearsay. Because we conclude the trial court did not abuse its discretion by excluding Michael's testimony under the Dead Man's Statute, whether the testimony constitutes hearsay is irrelevant.

[28] The parties agree the excluded testimony is hearsay; however, Stodghill contends the testimony is admissible under Indiana Evidence Rule 803(3), which provides that "[a] statement of the declarant's then-existing state of mind (such as motive, design, intent, or plan)" is "not excluded by the rule against hearsay." Evid. R. 803(3). Hearsay evidence can become admissible under this exception because evidence of a declarant's "then-existing state of mind at the time the statement was made," *D.R.C. v. State*, 908 N.E.2d 215, 226 (Ind. 2009), can be "more reliable than" classic hearsay, *id.* at 227.

[29] For several reasons, the trial court did not abuse its discretion by excluding the witnesses' testimony. First, the reliability and probity of state-of-mind evidence regarding an event is reduced when the statement is not made contemporaneously with the event. *See Spencer v. State*, 703 N.E.2d 1053, 1056 n.3 (Ind. 1999) (citing *Hicks v. State*, 690 N.E.2d 215, 223 (Ind. 1997)). Here, the witnesses were vague with regard to when Robert made the statements regarding his properties, so the statements are hardly probative of Robert's state of mind when the property transfers were made—potentially years later. Additionally, given that Robert suffered from dementia in his final years, it is not clear whether the statements were made before or after his symptoms began and whether he was in a lucid state when he made them.

[30] Second, none of the witnesses shed light on which or how many of Robert's properties he intended Stodghill to have. This is especially important because, in addition to the Disputed Properties, Michael transferred to Stodghill three additional properties that she owned in joint tenancy with Robert and would

have become the sole owner of after Robert's death by right of survivorship.[10] The witnesses' testimony was therefore not probative of whether Robert intended Stodghill to have the Disputed Properties.

Third, although state-of-mind evidence can be "circumstantial evidence of the declarant's future conduct," *D.R.C.*, 908 N.E.2d at 226 (citing *Mut. Life Ins. Co. of N.Y. v. Hillmon*, 145 U.S. 285 (1892)), such evidence is "not admissible when offered to prove a third party's conduct," *id.* at 228. "The danger of unreliability is greatly increased when the action sought to be proved is not one that the declarant could have performed alone, but rather is one that required the cooperation of another person." *Id.* at 227 (quoting 2 MCCORMICK ON EVIDENCE § 275 (6th ed. 2006)). Here, Stodghill was attempting to use the witnesses' testimony to justify the Disputed Property transfers, which was not something done by Robert alone but rather done by Michael while acting as Robert's attorney-in-fact.

Based on the foregoing, the witnesses' hearsay testimony does not fit squarely within the exception of Evidence Rule 803(3). The trial court thus did not abuse its discretion by excluding the testimony.

---

[10] *See* I.C. § 32-17-2-1(c).

### 3. The Trial Court Did Not Abuse Its Discretion by "Refusing to Order" Podlaski to Testify

Last, Stodghill argues that the trial court "abused its discretion" by "refusing to order" Podlaski to testify regarding his conversations with Robert. Appellant's Br. at 36. Stodghill argues that Podlaski's testimony would not constitute a violation of Indiana Professional Conduct Rule 3.7 because he would not be "testifying as a witness for his client [Michael], but rather was called as a witness in support of [Stodghill's] case." *Id.*

Stodghill recognizes, however, that the trial court excluded Podlaski's testimony, not based on Indiana Professional Conduct Rule 3.7, but based on Bradley's hearsay objection. Stodghill does not argue that the testimony is not hearsay, but only that the testimony was "permissible" because "it's rebuttal evidence as to what [Robert's] intentions were." Appellant's Br. at 39.

Stodghill has waived this argument because she cites no authority in support of her contention that characterizing Podlaski's testimony as "rebuttal" renders the evidence admissible; nor does she present a cogent argument as to the reason this should be so. *See* Ind. Appellate Rule 46(A)(8)(a) (requiring arguments be supported with "cogent reasoning" and "citations to the authorities [and] statutes . . . relied on"); *Miller v. Patel,* 212 N.E.3d 639, 657 (Ind. 2023) (quoting *Dridi v. Cole Kline LLC*, 172 N.E.3d 361, 364 (Ind. Ct. App. 2021)) ("We will not step in the shoes of the advocate and fashion arguments on his behalf, 'nor will we address arguments' that are 'too poorly developed or improperly expressed to be understood.'"). Waiver notwithstanding, a blanket

exception for "rebuttal" evidence would clearly swallow up our hearsay rules. Podlaski's testimony was inadmissible, and the trial court therefore did not abuse its discretion by "refusing to order" him to testify. *See* Appellant's Br. at 36.

## Conclusion

In sum, Stodghill's absence at the January Hearing does not require reversal of the trial court's fraudulent-transfer finding, the trial court did not abuse its discretion by excluding testimony regarding Robert's intentions as to the properties, and the trial court did not abuse its discretion by declining to order Podlaski to testify. We therefore affirm the trial court on all issues raised.

Affirmed.

May, J., and Mathias, J., concur.

ATTORNEY FOR APPELLANT

David M. Payne
Marion, Indiana

ATTORNEY FOR APPELLEE

Paul R. Sadler
Emswiller, Williams, Noland & Clarke, LLC
Indianapolis, Indiana